James DURBIN (Plaintiff), Appellant,

v.

Carlo CASSALO and George Saffa (Defendants), Respondents.

No. 30091.

St. Louis Court of Appeals.
Missouri.
Feb. 17, 1959.

sault and battery by defendant George Saffa upon the plaintiff. This occurred in a tavern owned by defendant Carlo Cassalo. The trial court directed a verdict for Cassalo and the jury returned a verdict against George Saffa in the sum of $1,000. From the resultant judgment the plaintiff prosecutes this appeal.

The plaintiff's petition, after alleging the assault and battery by Saffa, charges that Saffa was a person of a "vicious, violent and disorderly disposition", and that this was known to defendant Cassalo who owned and operated the tavern. It continues by charging that Cassalo employed Saffa and that Cassalo was negligent in failing to warn plaintiff of Saffa's disposition or in failing to order Saffa from the premises.

The defendants filed separate answers, both of which denied that Saffa was in the employ of Cassalo and both charged that the plaintiff provoked the fight in which he was injured.

The tavern in question is located on Broadway and Cerre Street in the City of St. Louis. In it were the usual bar and tables. The plaintiff went to the tavern around 6:00 or 6:30 in the evening. He had part-time employment selling vacuum cleaners and he was passing some time in between calls on customers. He was regularly employed by a trucking company. After he had been in the tavern for a while other persons came into the place and one of them started to play a pinball game that was near the end of the bar where the plaintiff was sitting. Defendant Saffa also came in and sat at a table not far from the bar and about three feet from him, at another table, defendant Cassalo and a police officer were sitting. The plaintiff, while sitting on a bar stool, watched the progress of the pinball game and at the same time engaged in an argument with defendant Saffa. Saffa and plaintiff were both employed by the same trucking company and had both known each other for about three years. They

Edward J. Delworth, Clayton, for appellant.

Morris E. Stokes, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent Cassalo.

WOLFE, Judge.

This is a suit for damages arising out of personal injuries resulting from an as-

started arguing about the privileges that plaintiff enjoyed by reason of his seniority rights at their place of employment. Plaintiff stated that at the time of the argument he was standing but leaning back against the bar stool. They were talking loud, but he considered it a friendly argument and did not know that Saffa was angry. He said that he did nothing to provoke Saffa to strike him and that he did not anticipate a fight, but that Saffa did approach and strike him. The blow fractured the plaintiff's jaw and rendered him unconscious. He was then taken to a hospital.

Plaintiff testified that he did not know who or what hit him until Saffa called upon him at the hospital to apologize. In addition to the fractured jaw he had a scalp laceration. The fracture was reduced by wiring his teeth together. He was in the hospital for five days and his jaw was wired shut for six weeks. During this time he was on a liquid diet. He lost 19 days of work which resulted in a loss of wages in the sum of $297. His hospital bill was $149.

Defendant Cassalo had known Saffa for about three or possibly five years and occasionally employed him to take charge of the tavern when he, Cassalo, was obliged to leave. Saffa was also a tenant of Cassalo and lived in a building to the rear of the tavern. Cassalo was aware of the fact that plaintiff and Saffa were arguing.

Plaintiff called Saffa to the stand and his version of what took place differed from the plaintiff's. He testified that during the argument the plaintiff came up to him and was jabbing him on the chest with his hand and cursing him. Saffa said that he warned the plaintiff not to curse him and when he continued to do so he struck him. Saffa was asked if he had had a fight at some undetermined time prior to the evening in question with a man named Britt. There was an objection to this question and the court sustained the objection.

Defendant Cassalo was also called by the plaintiff and he testified that Saffa was not working for him on the night in question. The witness was asked if he knew that Saffa had struck any one else with his fist prior to the evening in question. An objection was sustained to this and the plaintiff made an offer to prove that the witness knew that Saffa had a fight with another party at some previous time, and that Cassalo took no action to protect the plaintiff.

█ As stated, the court directed a verdict on behalf of defendant Cassalo, and the appellant contends that a case could have been made against this defendant if the court had not refused his offer of proof. It is asserted that this was error. The theory upon which the plaintiff proceeded was that Saffa was a person of dangerous propensities and that Cassalo knew this but failed to protect the plaintiff by warning him or removing Saffa from the premises. The sole proof offered of the alleged dangerous propensities of Saffa was that some time not stated Saffa had a fight with a man named Britt. The question before us on this point is the soundness of the trial court's ruling in excluding such evidence.

█ The law is settled as to the duty of a tavern owner to protect his patrons from assault, for if he permits a person to remain in his tavern knowing him to be one of vicious tendencies likely to inflict injury upon others, the tavern owner is generally under a duty to protect his patrons from the acts of such vicious person. Gregorc v. Londoff Cocktail Lounge, Mo., 314 S.W. 2d 704; Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 16 A.L.R.2d 904; Raybourn v. Gicinto, Mo.App., 307 S.W.2d 29.

█ Two steps of proof were required to bring the situation under consideration within this rule. First, Saffa would have to be proven a dangerous person, and second, it must be proven that this character-

istic was known to Cassalo. Some confusion exists as to the type of evidence admissible to prove character. As a general rule specific acts are not admissible. 32 C.J.S. Evidence § 436, p. 68. There may be exceptions to this, however, when a particular trait of character of a party is an actual issue and that trait is susceptible of proof by specific acts. In the cases of Hughes v. St. Louis Nat. League Baseball Club, supra, Dickinson v. Eden Theatre Co., 360 Mo. 941, 231 S.W. 2d 609, and Priest v. F. W. Woolworth Five & Ten Cent Stores, 228 Mo.App. 23, 62 S.W.2d 926, specific acts were considered in similar situations. See also Baulec v. New York and Harlem R. Co., 59 N.Y. 356; Wigmore on Evidence, 3rd Ed., Vol. 1, p. 681, para. 199a.

The cases relied upon by the plaintiff rest upon the proof of more than one act. They show a course of conduct indicating character. The proof that he offered falls short of that. The sole fact that a person at one time engaged in a fight would not be evidence that he was of a belligerent nature since he might have been forced into it, or his action at that one time might have been quite at variance with his real character. For this reason we hold that the court properly excluded the evidence as to the fight with Britt. This was the only offer made as to Saffa's character and consequently the tavern owner could not be charged with any duty to act. Since there was no evidence of breach of duty on Cassalo's part, the court properly directed a verdict in his behalf.

■■ The plaintiff complains about the conduct of counsel for Saffa. He first asserts that Saffa was asked how much he earned and that Saffa answered. After the answer was in he objected to the question and the court held that his objection came too late. Generally objections made after the question is answered are too late, and we cannot say that the court erred in so holding. Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511; Lesch v. Terminal Railroad Ass'n of St. Louis, Mo., 258 S.W.2d 686.

■ Defendant Saffa was asked if he had a family and to this question an objection was sustained. In what way the plaintiff had cause to complain about this is not clear.

■ Plaintiff also objected to counsel's argument wherein he said that Saffa did the same work as plaintiff did. This was in accordance with plaintiff's own testimony, and while it does not appear in any way material neither can it be held prejudicial. Counsel then stated that Saffa would have to pay any judgment entered against him. The court sustained plaintiff's objection to this and directed the jury to disregard it. No further action was requested by counsel so plaintiff cannot be heard to complain since the court did that which he requested it to do.

■ It is asserted that the verdict is grossly inadequate and should be set aside. There is no doubt that a verdict should be set aside where it is so small in amount that it appears to have been the result of passion, prejudice or partiality, but we cannot say that the amount awarded falls within that class. It is true that it is small, in that a considerably larger amount could not be held excessive, but that is not the yardstick by which we test inadequacy. No two juries could be expected to return a verdict for the same sum when awarding damages for personal injuries. Considerable latitude in both directions should be allowed before an appellate court condemns their verdicts as the result of passion or prejudice. We are cited to but one case in support of the plaintiff's contention, and that is Strange v. Ardison, Mo.App., 65 S.W.2d 115. The verdict in that case was for $500. It was decided in 1933 and granting that $1,000 would be worth no more today than $500 was in 1933, the similarity between the two cases ends there. The injuries in the Strange case consisted of a severe fracture

of the skull resulting in permanent injuries. The injuries in this case are in no way comparable, and we do not find it authority for setting aside this verdict.

For the reasons stated the judgment is affirmed.

RUDDY, P. J., and JOHN K. REGAN, Special Judge, concur.