**SOUTHWESTERN BELL YELLOW
PAGES, INC., Plaintiff–
Respondent,**

v.

**Gary D. ROBBINS d/b/a Just Brakes, Rob-
bins & Associates d/b/a Just Brakes,
Dale M. Akers, d/b/a Just Brakes, Akers
& Associates d/b/a Just Brakes, Defen-
dants–Appellants.**

No. 62728.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 12, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1993.

Reinert, Duree & Crane, P.C., David M. Duree, St. Louis, for defendants-appellants.

John E. Toma, Jr., Clayton, Southwestern Bell Yellow Pages, Inc., Linda S. Legg, Barbara E. McElroy, Anthony K. Conroy, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

This appeal arises from a breach of contract action resulting in a jury verdict for Plaintiff, Southwestern Bell Yellow Pages (Yellow Pages), in the sum of $9,883 and summary judgment in favor of Yellow Pages on defendants Robbins' and Aker's (R & A) counterclaim for negligent misrepresentation.

In 1986 R & A entered into a contract to purchase advertising for their brake companies in the 1986 edition of the Southwestern Bell Telephone book. R & A owned separate brake companies but decided to advertise them jointly since they both operated under the 'Just Brakes' franchise. The contract specified that the advertisement was to be red, three-eighths of a page ad and it was to come with two complimentary line listings and a complimentary gold page cut-out discount coupon. They also purchased an additional line listing. The ad referred to the coupon which was to be found in the back of the book. The total cost was $19,776. The contract contained an exculpatory clause which limited Yellow Pages' liability for omissions or errors to "the price paid for the relevant part of such advertising for the issue in which the error or omission occurs."

When the August 1986 version was printed, R & A noticed that although the book contained the ad and the three line listings, the coupon had been omitted. Yellow Pages testified that the coupon was inadvertently omitted, possibly due to the fact that Yellow Pages took R & A's order on the day in which everything was due to the printer, after the deadline for submission had passed. R & A still gave a discount to anyone who mentioned the Yellow Pages ad whether or not they mentioned the missing coupon. The information contained in the advertisement and the line listings were all correctly printed so there was nothing which would frustrate a customer's ability to contact R or A. R & A claimed, however, that the absence of the coupon, when the advertisement mentioned a coupon, undercut their credibility since a customer might think they offered different discounts to different customers. R & A refused to pay the contract price or the contract price less the price of the coupon to Yellow Pages claiming that Yellow Pages failed to substantially perform the contract because the omitted coupon was a material part of the contracted performance.

Yellow Pages brought an action for breach of contract. R & A counterclaimed for breach of contract, negligence and negligent misrepresentation. The counterclaim for negligent misrepresentation was based on the argument that Yellow Pages negligently represented that they would print the coupon when they knew or should have known that the coupon would not be printed. The trial court granted Yellow Pages summary judgment on R & A's three-count counterclaim.

At trial, R & A claimed that most of their advertising contained cut-out discount coupons and that a potential customer who had a

coupon would almost always make a purchase. They contend that they would not have purchased the advertisement if it did not come with the coupon. Yellow Pages claimed that if R & A desired only the coupon, they could have purchased it separately for $2,662 instead of spending $19,776 for the advertisement which came with the coupon. Furthermore, Yellow Pages submitted evidence that R & A ordered a larger and more expensive advertisement during the year in question than the Just Brakes franchise had ordered the preceding year. Additionally, Robbins admitted during cross-examination that they wanted the advertisement as well as the coupon.

R & A also claimed that the omission of the coupon led to a substantial decline in gross sales. Robbins testified as to his monthly gross sales from August 1984 to July 1987 and the percentage of his monthly gross sales attributable to coupons. He calculated these figures based on invoice sheets on which he noted whether a customer submitted a coupon, or in the year the coupons were omitted, whether a customer mentioned the Yellow Pages ad. Neither R nor A kept records of the number of people who were drawn to Just Brakes by the ad but declined to make purchases.

Yellow Pages claimed the coupon was gratuitous and that because they had substantially performed by printing the ad and the three line listings, they were entitled to the costs due under the doctrine of substantial performance. Yellow Pages also claimed that the omission of the coupon in this particular case did not significantly diminish the effectiveness of the advertisement. To support its position and rebut R & A's position, Yellow Pages called Terrance J. Schroepfer, an economist employed by Southwestern Bell Telephone, as an expert witness. Schroepfer testified that the gross sales analysis suggested by R & A was deceptive because of the many factors which could account for the decrease in gross sales. He claimed that the proper way to determine whether R & A received the substantial benefit of their bargain was by way of a customer contacts analysis, i.e., a comparison of the percentage of customers who came to R & A's stores as a result of the ad in 1985 when the coupon was included in the Yellow Pages book verses 1986 when the coupon was omitted. Although under the gross sales analysis, there was a marked decline in R & A's business during the year the coupons were omitted, under the customer contacts analysis, the difference was statistically insignificant. Schroepfer also testified, over objection, about other factors which could account for the decrease in R & A's gross sales during the year in which the coupon was omitted.

Yellow Pages further explored the possibility of alternative causes for the decline in gross sales during the cross-examinations of R & A. There was a great deal of testimony regarding the financial state of R & A's businesses prior to and during the year in question. It is important to note that these businesses were not healthy and thriving prior to Yellow Pages inadvertent omission of the coupon. R & A's franchises had never made a profit and their gross sales were declining every year, not just the year in question. The coupon was omitted from August 1986 thru August 1987. During the preceding years, a coupon placed by the franchisor was included in the Yellow Pages. Robbins testified during cross-examination that his business suffered losses of approximately $61,000 in 1984, $30,000 in 1985, $14,000 in 1986 and $31,000 in 1987.[1] Furthermore, during cross-examination Robbins tabulated the figures he gave on direct-examination based on book year sales (September–August) rather than calendar year sales (January–December). He testified that his average monthly sales from September 1984 to August 1985 were $19,239; from September 1985 to August 1986 were $16,367 and from September 1986 to August 1987 were $13,262, evidencing consistently declining profits. Robbins' average monthly sales dropped $2,872 when a coupon was included in the Yellow Pages, and $3,105 when the coupon was omitted. Akers, who like Robbins had no background in the automotive business,

---

1. Approximate numbers are being used in this section because there is an error in the way some of the numbers are transcribed in the record.

also testified that he lost money every year that he owned his store.

Robbins also admitted that the brake business was extremely competitive and R & A's businesses had to compete with larger businesses such as Midas, Meineke and dealers in addition to other corner-service stations and brother-in-laws. Furthermore, he testified that the franchisor promised services he never delivered; R & A did not receive the promised training, they were not receiving parts at a volume discount and they did not have a central warehouse for parts for their use. Robbins, who purchased the business intending to be an absentee owner, and had no knowledge of the automotive industry, ended up volunteering as President of the Just Brakes Corporate Systems, in an attempt to save his business. Moreover Akers testified on cross-examination that his business had four different managers in a little over two years: one of whom stayed for only one week, one who had problems with alcohol and had an unkempt appearance, and one who was in the process of having a nervous breakdown. R & A no longer own the franchises.

Julie Lea, a Southwestern Bell Yellow Pages Customer Service Specialist and a prior sales representative, testified that Yellow Pages used testimonials to induce shopkeepers, including R & A, to purchase coupons which could be purchased separately for $2,661. These testimonials stated that 60% to 70% of other customers' new business had been generated by the gold coupons, and that 80% of all households use the coupons. She testified, however, that Yellow Page's goal was to bring shopkeepers and potential customers in contact, but that it was up to the shopkeeper to make the sale.

The jury was instructed that if they determined that Yellow Pages substantially performed, they could reduce the contract price less any sum necessary to correct any variations. (M.A.I. 4.08). The jury returned a verdict for Yellow Pages in the sum of $9,883.

R & A's appeal is based on four points. First, they claim the trial court erred in denying their motion for a directed verdict and a judgment notwithstanding the verdict on the ground that Yellow Pages failed to substantially perform the contract. Second, R & A claim the trial court erred in granting Yellow Pages' motion for summary judgment on their counterclaim for negligent misrepresentation. Third, they claim that the trial court erred in admitting evidence, over objection, of managerial problems that Aker had experienced and of a lawsuit that R & A had filed against their franchisor. Fourth, R & A claim that the trial court erred in denying their motion for a directed verdict or a judgment notwithstanding the verdict because by returning a verdict for only half of the original contract price, the jury inherently found that Yellow Pages had not substantially performed.

## I.

■ R & A's first point on appeal is that the trial court erred by failing to grant their motion for a directed verdict at the close of the evidence and by failing to grant their motion for a judgment notwithstanding the verdict since the inclusion of the coupon was an important part of the advertising contract and Yellow Pages' failure to include the coupon constituted a failure to substantially perform Yellow Pages' part of the bilateral contract as a matter of law. On appeal, this court does not weigh the evidence, determine the credibility of witnesses or resolve facts; we only determine if there is sufficient evidence to support the verdict. *Marshall v. Edlin*, 690 S.W.2d 477, 479 (Mo.App.W.D. 1985).

■ In determining whether the trial court should have directed a verdict for R & A or granted a judgment notwithstanding the verdict, this court must view the evidence in the light most favorable to Yellow Pages, giving it the benefit of all reasonable inferences, and ignoring R & A's contrary evidence except to the extent it aids Yellow Page's case. *Marti v. Economy Fire and Cas. Co.*, 761 S.W.2d 254, 255–56 (Mo.App. E.D.1988). Withdrawing a case from the jury is a drastic measure which should not be taken unless there is no room for reasonable minds to differ on the issues, in the exercise of a fair and impartial judgment. *Id.* at 255.

A jury's verdict must not be set aside unless there is a complete absence of probative facts to support the jury's verdict. *Steif v. Limpiphiphatn,* 814 S.W.2d 695, 697 (Mo.App.S.D. 1991).

### Determination of Whether Substantial Performance Test is Applicable Under the Circumstances

█ Yellow Pages claims that it is entitled to compensation because it substantially performed its obligations under the contract. A party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance. *Gundaker v. Templer,* 560 S.W.2d 306, 309 (Mo.App.1977)

█ Under this test we first must determine what literal performance would entail. In this case, literal performance would have consisted of printing the ad, the three line listings and the coupon. Yellow Pages argues that the fact that R & A contracted for the ad and the additional line listing, and the coupon and two line listings were complimentary, indicates that literal compliance did not include the printing of the coupon. We do not agree. R & A were sold a package deal. They were induced into entering the contract when they were offered not only the advertisement but also the line listings and the coupon. The coupon, which could be purchased separately for $2,662 was considered complimentary when a customer purchased a three-eighths of a page advertisement. Yellow Pages cannot now sever the contract to serve its purpose claiming that the coupon was a gift unsupported by consideration, and, therefore, not binding when the very item Yellow Pages claims was gratuitous was used to induce R & A to enter into the contract. Nevertheless, the fact that Yellow Pages was under an obligation to provide the coupon, and failed to fulfill this obligation is not dispositive of this case. Under the doctrine of substantial performance a jury can find that a contract was substantially performed even though the contract terms were not strictly followed.

█ The second prong of the test requires a finding that substantial performance is an acceptable substitute to full performance in the particular case. Substantial performance has been found to be an acceptable substitute to full performance in cases involving services in which the contract was not expressly conditioned on literal performance. *See Gundaker,* 560 S.W.2d at 309. In this case there was no such express condition. Substantial performance, if it was present, is therefore an acceptable substitute to full performance under this contract.

### Determination of Whether Yellow Pages Substantially Performed

█ The final prong of the test requires a determination of whether the party substantially performed under the contract. A review of the testimony reveals that there was sufficient evidence to support a jury finding of substantial performance. Under the doctrine of substantial performance, a party who does not render exact performance is still entitled to compensation if the defects in performance are sufficiently slight such that the party received substantially the same benefit it would have received from literal performance and damages will complete the contract. *Id.* at 309.

█ The question of whether a party substantially performed is generally a question for the jury. *Id.* at 309 n. 1. However, this assessment has been held to constitute a question for the court in a situation in which the defect in performance was slight as a matter of law because the omitted performance would "have served no practical purpose." *Id.* at 309 n. 1, 310. R & A argue that Yellow Pages did not substantially perform as a matter of law because they did not print the coupon. We do not agree. Withdrawing a case from the jury is a drastic measure, which should not be taken unless there is no room for reasonable minds to differ on the issues, in the exercise of a fair and impartial judgment. *Marti,* 761 S.W.2d at 255. A review of the transcript, when read in the light most favorable to Yellow Pages, reveals that there was sufficient evidence from which the jury could reasonably find that Yellow Pages substantially performed its contract with R & A.

Under the contract Yellow Pages was obligated to publish a red, three-eighths of a page advertisement, three line listings and a coupon. A jury could have reasonably found that R & A received substantially the same benefit that they would have received from literal performance of the contract because the essential purpose of the contract was fulfilled when Yellow Pages printed the ad and the line listings. When R & A contracted with Yellow Pages, their ultimate goal was to advertise their businesses in order to attract potential customers. The coupon was only one of the means which was to be used to accomplish the ends of attracting customers to their businesses. Sufficient evidence was adduced at trial which showed that even without the coupon, the ad served the goal of attracting customers to R & A.

R & A argues that in determining whether Yellow Pages substantially performed, the testimony of Yellow Pages' expert, Schroepfer, that the gold coupons were of no value, should be disregarded under one of three theories. First, citing *Hyatt Corp. v. Occidental Fire & Cas. Co.*, 801 S.W.2d 382, 390, 391 (Mo.App.W.D.1991), R & A argues that in light of the claims made in the testimonials, Yellow Pages should be judicially estopped from arguing that the coupons were of no value. Second, R & A claim that Schroepfer's testimony must be disregarded because Yellow Pages is bound by the unequivocal testimony of Lea, Yellow Pages' employee, that the price of a coupon when purchased alone is $2,661 and the claims made in the testimonials concerning the effectiveness of the coupons. Third, citing *Kelly v. Terminal Railroad Ass'n*, 315 S.W.2d 699, 702 (Mo.1958), R & A claims that the damaging testimony should be disregarded because it is manifestly untrue, incredible, impossible, does not amount to substantial evidence and has no probative value.

The first problem with all of these arguments is that they are based on a misreading of the transcript. Yellow Pages' witness did not testify that the coupons were "valueless." Schroepfer's testimony was case specific. He claimed, after analyzing the data concerning Robbins' business, that the percentage of Yellow Pages referrals to Robbins' business remained virtually the same the year that the coupon was inadvertently omitted as it was the year when the coupon was included in the Yellow Pages leading Schroepfer to conclude that *the coupon's effect on Robbins' business* was "statistically insignificant." Schroepfer testified that he was unable to conduct the same analysis of Akers' business due to Akers' failure to fill in the information requested on the invoice slips concerning how the customers first learned of Aker's business. Schroepfer noted, however, that there was nothing in Akers' records which would lead him to a different conclusion with regard to the effectiveness of the advertising for Akers' store. Schroepfer's testimony also does not conflict with the claims made in the testimonials which were used to induce R & A into entering into the contract because the wording in the testimonials was also case specific. The testimonials described other customers' experiences with the coupons; they did not claim that every customer would have the same return rate on the coupons.

 R & A's second reason for disregarding Schroepfer's testimony is that Yellow Pages must be bound by the unequivocal testimony of Lea, Yellow Pages' employee, that the price of a coupon when purchased alone is $2,661. While value and price sometimes correlate, the two terms have distinct meanings and when a subjective measure is added, they often fall miles apart. In a case in which a party alleges that he is entitled to compensation because he substantially performed, the jury must determine whether the party substantially performed and then adjust the contract price to allow for the defect in performance. Under the doctrine of substantial performance, if a party is found to have received the substantial benefit of the bargain, the contract will be enforced. It logically follows that in determining whether the party substantially performed, value and not price, is the determinative factor. The price of the omitted performance may, however, be taken into account as one of the factors in adjusting the contract price to account for the defect in performance. In this case, Lea's testimony that the price of the coupon when purchased separately was $2,661 did not contradict Schroepfer's testi-

mony concerning the value of the coupon to R & A's businesses.

Third, citing *Kelly,* R & A claim that the damaging testimony should be disregarded because it is manifestly untrue, incredible, impossible, does not amount to substantial evidence and has no probative value. *Id.* at 702. In *Kelly,* plaintiff brought suit against a railroad company for injuries he sustained when the automobile in which he was a passenger was struck by defendant's train. Appellant asked the court to rely solely on an engineer's testimony that on a dark, rainy night, on icy, slippery tracks, a train pulling a carload of livestock should have been able to stop in about ten to twelve feet. *Id.* at 702. If this testimony was true, assuming the train was travelling at a speed of twenty miles per hour, the train should have been able to stop in one-third of a second; if the train was travelling at fifteen miles per hour, the train, pulling its carload of livestock on an icy track, should have been able to stop in one-half of a second. The court rejected this testimony, holding that it was "so contrary to common knowledge and experience and the laws of physics as to be manifestly incredible and impossible." In contrast, in this case, Schroepfer's assessment of the coupon's value, based on factors that in his professional opinion he considers relevant, is highly probative to the question of substantial performance and is not "manifestly untrue, incredible or impossible," especially to a scientific certainty. As noted earlier, we do not believe that Schroepfer's testimony contradicts either the claims made in the testimonials or Lea's testimony concerning the coupon's price if purchased separately. Furthermore, Schroepfer's analysis is just one way of looking at the data collected on the invoice sheets. The gross sales analysis presented by R & A is another method of considering the data. It is not this court's role to decide which is the superior method of determining the coupon's value or to disregard the results of one method of analysis simply because it conflicts with the results from another method of analysis. Appellants had an adequate opportunity at trial to cross-examine Schroepfer and to provide the jury with the results of their gross sales analysis. The jury, presented with a great deal of data derived from both methods of analysis, had the opportunity to weigh the evidence as it saw fit in arriving at its verdict. Considering the fact that the jury only awarded Yellow Pages half of the original contract price, the jury obviously did not give much weight to Schroefer's testimony. There is no basis in law, for this court, on appeal, to disregard Schroepfer's testimony. Finally, in reviewing a denial of R & A's motion for a directed verdict and a judgment notwithstanding the verdict, this court must consider the evidence presented in the light most favorable to Yellow Pages, giving Yellow Pages the benefit of all reasonable inferences, and ignoring R & A's contrary evidence except to the extent that it aids Yellow Pages' case. *Marti,* 761 S.W.2d at 255–56. In determining whether there was sufficient evidence for a jury to find that Yellow Pages substantially performed, we therefore must consider Schroepfer's testimony that under a customer contacts analysis, the omission of the coupon did not significantly diminish the effectiveness of the Yellow Pages advertisement.

In addition to considering the fact that Yellow Pages printed the red, three-eighths of a page ad and the three line listings and Schroepfer's testimony concerning the negligible effect of the omission of the coupon, in determining whether R & A's motion for a directed verdict and motion for a judgment notwithstanding the verdict were properly denied, we must also consider evidence of alternative reasons for their decrease in business. Yellow Pages' witnesses testified, for example, that R & A's sales may have declined as a result of managerial problems, lack of sufficient training and problems in acquiring parts. As Yellow Pages' witness testified, Yellow Pages' goal was to bring shopkeepers and potential customers in contact with one another; but that the shopkeeper was the only one who had control over whether or not a sale was finalized. Accordingly, customers who saw the coupon may still not have made purchases at R & A's businesses due to factors which were within their, but not Yellow Pages', control.

In R & A's last argument under point I of their appeal, they claim that if Schroepfer's testimony establishes a jury issue as to the

value of the gold coupons, such testimony also establishes R & A's counterclaim for negligent misrepresentation or fraudulent intentional misrepresentation. They claim that since Schroepfer was employed by Southwestern Bell Telephone, a sister company of Yellow Pages, if he believed that the coupons were valueless at the same time that Yellow Pages was using testimonials praising the coupon's value, Yellow Pages is liable for fraudulent, intentional misrepresentation. This argument is also derived from a misreading of the transcript since, as discussed above, Schroepfer never claimed that the coupons were valueless in general but only that they had not helped R & A's businesses. Furthermore, the trial court acted within its discretion when it granted summary judgment on this issue. See discussion under Point II.

R & A's motion for a directed verdict was properly denied because the question of substantial performance was an issue over which reasonable minds could easily differ and therefore was properly sent to the jury. In addition, R & A's motion for a judgment notwithstanding the verdict was properly denied because the verdict was reasonably supported by evidence presented at trial.

Point denied.

## II.

R & A's second point on appeal is that the trial court erred in granting summary judgment for Yellow Pages on R & A's first amended counterclaim which alleged negligent misrepresentation inducing R & A into the advertising contract with Yellow Pages.

A motion for summary judgment is granted if, when considered together, the pleadings, depositions, answers to interrogatories, admissions on file and any submitted affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Mo.Sup.Ct.R. 74.04(c); *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 709 (Mo. banc 1990). In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the party against whom the

motion for summary judgment was filed and against whom summary judgment was rendered. *Tatum v. General Motors Acceptance Corp.*, 732 S.W.2d 591, 592 (Mo.App. E.D.1987). In a case such as this in which the trial court's grant of summary judgment does not specify the basis upon which summary judgment was granted, this court must uphold the trial court's grant of summary judgment if it is appropriate under any theory. *See City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31, 34 (Mo.App.E.D.1979). R & A claimed in Count III of their First Amended Counterclaim for Negligent Misrepresentation that Yellow Pages negligently represented that they would print the coupon in addition to the ad and the line listings and that they failed to print the coupon. R & A argues on appeal of the grant of summary judgment that Yellow Pages *negligently or intentionally misrepresented the value of coupons* which were omitted from the 1986 version of the Southwestern Bell telephone book in order to induce them to enter into a contract to purchase ad space. The contract included an exculpatory clause which has repeatedly been held to be valid under Missouri law. *See Tobler's Flowers, Inc. v. Southwestern Bell Telephone Co.*, 632 S.W.2d 15, 17 (Mo.App.W.D.1982). R & A asserts that the exculpatory clause has been found to be invalid in cases involving intentional torts. *See Engman v. Southwestern Bell Telephone Co.*, 591 S.W.2d 78, 80 (Mo.App.W.D.1979). They conclude that the exculpatory clause should also be invalid in cases of negligent misrepresentation inducing advertisers into advertising contracts. We decline to reach this issue however, since the arguments raised in support of this point are based on testimony at trial evidence which was not before the court at the time the motion for summary judgment was granted. Point denied.

## III.

R & A's third claim is that the trial court erred in admitting testimony over objection concerning a lawsuit which R & A had filed against their franchisor and testimony concerning Akers' prior manager's alcohol use and unkempt appearance.

The trial court has wide discretion to admit evidence which will not be

disturbed on appeal absent an abuse of that discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). The trial court abuses its discretion only when "its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* at 250 (quoting *Richardson v. Colonial Life and Acc. Ins. Co.*, 723 S.W.2d 912, 915 (Mo.App. W.D.1987)). In this case, the trial court could have reasonably believed that the testimony concerning the managerial problems that Akers was undergoing and the lawsuit against the franchisor was relevant to this lawsuit.

The testimony elicited from Akers concerning his constant flux of new managers is relevant evidence of alternative causes for Akers' decline in business. R & A claim that an improper foundation was laid at trial for the introduction of this evidence since it was never established that these things took place during the course of the year in which the coupon was omitted. A review of the transcript has revealed otherwise. Akers testified he purchased his business in June 1985. He also testified that his first manager stayed for only one week, his second manager, who had problems with alcohol and an unkempt appearance, stayed approximately eight to nine months, his third manager, who was undergoing a nervous breakdown, stayed for approximately one year before being replaced by Akers' fourth manager who stayed until Akers sold the business. The coupon was omitted from August 1986 to August 1987. Akers' second manager, who had problems with alcohol, therefore worked until approximately five months before the coupon was omitted. It is entirely possible that customers during this period decided not to return to Akers' business as a result of this manager's intoxicated and unkempt state. Moreover, during part of the year in which the coupon was omitted, Akers employed a manager who was undergoing severe psychological problems. This factor could have also contributed to Akers' decreased sales. The lack of continuity in managers could also account for decreased customer loyalty and declining sales.

Yellow Pages' cross-examination of Robbins concerning services promised by the franchisor yet never received, revealed that R & A's managers had not received the promised training, Robbins never went through any management training because he planned to be an absentee owner and the businesses were not receiving parts at the bulk discount.

An examination of the transcript also reveals that the trial court entertained several extensive sidebars to discuss exactly what testimony would be allowed concerning the lawsuit against the franchisor. The fact that the evidence concerning alternative reasons for the decline in R & A's businesses was introduced piecemeal between these extensive sidebars reveals the careful, deliberate consideration which the trial court gave to the testimony which was eventually allowed. For the above reasons we believe that the trial court's rulings were not so unreasonable and arbitrary that it shocks the sense of justice and we defer to the trial court's discretion. Point denied.

## IV.

R & A's fourth and final point is that the trial court erred in failing to grant their motion for a directed verdict at the close of all of the evidence or their motion for a judgment notwithstanding the verdict because by returning a verdict for only half of the contract price, the jury found that the Yellow Pages had not substantially performed. This argument fails as to the directed verdict since the jury verdict came down after the motion for a directed verdict was granted. This argument fails as to the motion for a judgment notwithstanding the verdict since in accordance with the doctrine of substantial performance, the jury followed the instructions and reduced the contract price to allow for the defect in performance. Point denied.

Judgment affirmed.

SIMON, P.J., and STEPHAN, J., concur.