Myron BROWN, Respondent,

v.

Raymond C. VAN NOY, Defendant,

Martin City Pub, Inc., Appellant.

No. WD 47222.

Missouri Court of Appeals,
Western District.

May 24, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1994.

Application to Transfer Denied
Aug. 15, 1994.

 

Leonard Rose, Richard J. Haskins, Rose, Brouillette & Shapiro, P.C., Kansas City, for appellant.

H. George Lafferty, Jr., Teasdale & Lafferty, Kansas City, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

ULRICH, Presiding Judge.

Martin City Pub, Inc. (Martin City Pub), appeals the judgment entered, following jury verdict, against the Martin City Pub and in favor of Myron Brown and the order overruling Martin City Pub's Motion for Judgment Notwithstanding the Verdict (j.n.o.v.) or in the alternative for a new trial, on Mr. Brown's negligence claim. The jury determined that Martin City Pub was 75% at fault and that Mr. Brown was 25% at fault. The jury found $267,500 in total damages. Accordingly, the court's judgment awarded Mr. Brown actual damages of $200,625.

The judgment is reversed and the case is remanded for a new trial.

## FACTS

On the night of July 26, 1990, Myron Brown entered Martin City Pub. While at the tavern, Mr. Brown consumed, at a minimum, two glasses of rum and Coke. He may have also consumed some beer. Mr. Brown observed two women playing billiards. He made a bet with one of the women on the outcome of the pool game. The bet was for ten dollars. Mr. Brown placed a twenty dollar bill on the pool table, and the woman placed a ten dollar bill next to it. Mr. Brown lost the bet. He testified that he picked up the ten dollar bill and left the twenty dollar bill for the woman. Witnesses saw him pick up what they believed was the ten dollar bill and leave the area of the pool table. A few minutes later the woman began to yell that Mr. Brown had "ripped her off." Mr. Brown and the two women argued for several minutes across the room. The women then left and returned a few minutes later with two men, Mike Becker and Tommy Doyle. The men told Mr. Brown to give one of the

women ten dollars. In response Mr. Brown swore and said, "I paid that girl, I ain't paying her again." One of the men shoved Mr. Brown several times. As Mr. Brown turned, Mike Becker hit him once in the face. Mr. Brown collapsed unconscious on the tavern floor. Mr. Brown was unconscious for a period of 15 to 30 minutes. While Mr. Brown was unconscious either Mr. Becker or Mr. Doyle reached into Mr. Brown's pocket, took out a single bill, and gave it to the two women. Mr. Becker, Mr. Doyle and the two women then left the pub. The bartender did not call the police, an ambulance or a physician. The bartender did supply ice and towels to pub patrons who were trying to rouse Mr. Brown. After 15 to 30 minutes an acquaintance and two other Pub patrons "more or less carried" Mr. Brown to his car and laid him in the car in a dazed state. The acquaintance testified that he viewed Mr. Brown two or three times before the pub closed and each time told the bartender that Mr. Brown was still in the car and not moving. The pub closed at approximately 1:30 a.m. Around 6:30 a.m., Mr. Brown drove himself home in his car.

Nineteen days later, Mr. Brown first sought medical attention. Mr. Brown explained the delay by saying he did not have medical insurance and he hoped he would improve without medical attention. He said he was generally disoriented and remained in bed under his mother's care. His mother continually encouraged Mr. Brown to consult a physician. When he realized that he was not recovering and had suffered serious injury, he relented and allowed himself to be taken to a physician. The examining physician sent him to Research Hospital for x-rays and then referred him to a surgeon.

Mr. Brown's eye socket, cheek bone and nose had been fractured. He had also suffered nerve damage and a ruptured disc in his neck. A twelve-hour surgery was required to repair the damage to Mr. Brown's face. Mr. Brown also required separate surgery for the ruptured cervical disc. Mr.

Brown continues to suffer pain, weakness, headaches, and vision impairment.

Mike Becker grew up in the Martin City area and was well known to the "owner" of the Martin City Pub, Raymond C. Van Noy. Mr. Becker is about six feet tall and weighs over 185 pounds. He was a Golden Gloves boxer. Mr. Brown is about five feet nine inches tall and weighs less than 145 pounds.

Mr. Van Noy acknowledged that he knew before July 26, 1990, that Mike Becker had been in fights. Mr. Van Noy said, "Mike Becker is one tough kid and just seems to attract fights." Martin City Pub barred patrons who fought or were unruly, but on no occasion, even after the attack on Mr. Brown, had Mr. Becker ever been barred from the Martin City Pub. Mr. Van Noy was not present at the tavern when Mr. Becker struck Mr. Brown.

Shortly after the assault, a witness gave a statement that he had seen Mr. Becker in several fights at the Martin City Pub before the assault on Mr. Brown.[1] The witness stated that one of the fights involved Mr. Van Noy's son.

## MOTION TO DISMISS

■ Mr. Brown filed a motion to dismiss this appeal claiming that the appeal failed to comply with Missouri Rules 72.01, 78.03 and 78.07 and thereby failed to preserve any issues for appeal. Martin City Pub, in its oral motion for directed verdict, both at the close of plaintiff's presentation of evidence and again at the close of all evidence, specifically contended that insufficient evidence was presented to support Mr. Brown's negligence claim. Rule 72.01 allows a party to move for j.n.o.v. if the party had moved for a directed verdict at the close of all the evidence. The motion for judgment n.o.v. can request that the court enter judgment in accordance with the motion for directed verdict. Rule 72.-01(b). Martin City Pub's motion for judgment n.o.v. was sufficient to preserve for appeal the issue of whether sufficient evidence was presented to support the jury's verdict.

---

1. At trial this witness seemed confused and thought that he remembered that some of the fights involved Tommy Doyle and not Mike Becker. He testified, however, that he had read his statement at the time it was taken and signed a declaration that it was true.

■ Contentions not raised in the motion for a new trial cannot be considered on appeal. Rule 78.07; *Bussell v. Leat*, 781 S.W.2d 97, 100 (Mo.App.1989). Martin City Pub, in its alternate motion for a new trial, did not offer any grounds for error, neither did it "incorporate by reference" the accompanying suggestions in support part of the motion for a new trial. The motion stated: "In support of both motions, Defendant *refers* the Court to the Suggestions in Support of Defendant's Motion for Judgment Notwithstanding the Verdict Or, In The Alternative, For A New Trial, filed concurrently herewith."

The motion specifically referred to the accompanying suggestions in support and the suggestions in support specifically outlined the alleged errors. The better expression of intent is to "incorporate by reference" a second document when the second document is essential to the motion. In this case however, where the objections at trial were specific and the motions for j.n.o.v. or a new trial evinced the intent to include the allegations of error included in the accompanying suggestions in support, Mr. Brown's motion to dismiss this appeal is denied.

## INSUFFICIENCY OF EVIDENCE

■ Although this case must be reversed and remanded because the verdict director was prejudicially deficient, the other issues raised will recur on retrial and are, therefore, addressed. As its first point on appeal, Martin City Pub alleges that the trial court erred in overruling its motion for a directed verdict because insufficient evidence was adduced to prove Martin City Pub owed a duty to protect Mr. Brown from injury by Mr. Becker. Martin City Pub avers that insufficient evidence was presented that Mr. Becker was an individual with vicious tendencies who was likely to inflict unprovoked injury upon others. Martin City Pub also contends that Mr. Brown presented insufficient evidence that Martin City Pub knew Mr. Becker was an individual with vicious tendencies who was likely to inflict unprovoked injury upon others.

■ Appellate courts do not weigh the evidence, determine the credibility of witnesses, or resolve facts; appellate courts determine, on appeal, whether the record reflects sufficient evidence to support the verdict. *Southwestern Bell Yellow Pages v. Robbins*, 865 S.W.2d 361, 365 (Mo.App.1993). In determining whether the trial court should have directed a verdict or granted a judgment notwithstanding the verdict, this court must view the evidence in the light most favorable to Mr. Brown, giving him benefit of all reasonable inferences and ignoring Martin City Pub's contrary evidence except to the extent it aids Mr. Brown's case. *Id.* Withdrawing a case from the jury is a drastic measure which should not be taken unless reasonable minds, exercising fair and impartial judgment, would not differ on the issues. *Id.* A jury's verdict must not be set aside unless there is a complete absence of probative facts to support the jury's verdict. *Id.* at 366.

■ As a general rule, a party has no duty to protect another from a deliberate criminal attack by a third person. *Faheen v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo.App.1987). The law recognizes exceptions to this general rule. These exceptions include, *inter alia*, obligations arising from "special relationships" or "special facts and circumstances." *Id.* Special relationships exist when one entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Id.* This case does not pose a special relationships situation. The special facts exception requires some relationship which encourages the plaintiff to come upon defendant's premises, plus additional facts. *Id.* A tavern owner and tavern patron have that minimum relationship. To establish duty requires additional elements. This duty may arise "when a person, known to be violent, is present on the premises or an individual is present who has conducted himself so as to indicate danger and sufficient time exists to prevent injury." *Id.* at 273. The record does not support the second alternative. The case was submitted on the premise that the pub knew Mike Becker was violent and that he was on the premises. A tavern owner has the duty to protect his patrons from injury by any person on the tavern's premises who

is known to be violent or has conducted himself in a manner so as to indicate danger to the bar patrons. *Thiele v. Rieter,* 838 S.W.2d 441, 443 (Mo.App.1992).[2] When a tavern owner permits a person to remain in his tavern, knowing him to manifest vicious tendencies likely to inflict injury upon others, the tavern owner has a duty to act to protect his patrons. *Nappier v. Kincade,* 666 S.W.2d 858, 861 (Mo.App.1984) (citing *Durbin v. Cassalo,* 321 S.W.2d 23, 25 (Mo.App. 1959)).

Probative facts were presented at trial that permitted the jury to find that Mr. Becker was a person with violent tendencies. The evidence presented, which must be presumed true, *Loomstein v. Medicare Pharmacies, Inc.,* 750 S.W.2d 106, 112 (Mo.App.1988), exhibited that Mike Becker had been a boxer, had a penchant to fight, and had been in numerous bar fights. Mr. Brown is given the benefit of all reasonable and favorable inferences drawn from the evidence. *Id.* It is not unreasonable for a jury to conclude, from Mr. Becker's proclivity to fight, combined with knowledge that he had fought many times, that Mike Becker is a person with violent tendencies that could be dangerous to pub patrons.

In like manner, probative facts presented at trial permitted the jury to conclude that Martin City Pub, through its "owner," Mr. Van Noy, or its employees, knew of Mike Becker's violent tendencies and of his capacity to do serious harm to another. Mr. Van Noy testified at trial and the jury had the opportunity to determine his credibility regarding his prior knowledge of Mike Becker's vicious tendencies. The probative facts presented included: Mr. Van Noy's admission that "Mike Becker is one tough kid who just seems to attract fights;" he knew of other fights in which Mike Becker had participated; he knew Mike Becker had been a boxer; he had known Mike Becker since Mike Becker was little; Mr. Van Noy's and Mike Becker's relationship was such that

Mike Becker called Mr. Van Noy "pappy;" and when Mike Becker's child was born, he took the child to the pub to show Mr. Van Noy. It was not unreasonable for the jury to conclude that Mr. Van Noy knew of Mike Becker's violent tendencies, and he knew Mike Becker could administer serious injury to his bar patrons. The trial court did not err in overruling Martin City Pub's motion for directed verdict and its motion for judgment n.o.v. Point one is denied.

## ULTIMATE FACTS IN THE VERDICT DIRECTOR

For its second point on appeal, Martin City Pub claims as error that the verdict directing instruction did not require the jury to find all the ultimate facts. Martin City Pub argues that the instruction permitted the jury to assume that Mike Becker was an individual with vicious tendencies and only submits to the jury the question whether Martin City Pub knew or should have known that Mike Becker had vicious tendencies. Part "B" of Martin City Pub's second point on appeal involves use of the word "unprovoked" and is discussed separately in conjunction with point three.

■ The test on not-in-MAI instructions is whether the jury can understand the instruction and whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict. *First Nat'l Bank v. Kansas City Southern Ry.,* 865 S.W.2d 719, 734 (Mo.App. 1993). A not-in-MAI instruction should only submit ultimate facts, *Mobley v. Webster Elec. Coop.,* 859 S.W.2d 923, 933 (Mo.App. 1993), but is not to submit mere evidentiary facts. *Duncan v. First State Bank,* 848 S.W.2d 566, 568 (Mo.App.1993). There is no precise, universally applicable definition which explicitly differentiates evidentiary facts from ultimate facts. *Id.* at 569. Courts must decide on a case-by-case basis the ultimate facts that must be submitted in an

---

**2.** *Thiele* cites Restatement (Second) of Torts § 314(A) that a possessor of land who holds it open to the public is under a duty to members of the public who enter in response to his invitation. This duty is similar to that of a common carrier to take reasonable action to protect the business invitees against unreasonable risk of physical harm and to give them first aid and care for them until they can be cared for by others. *Id.* The failure to provide first aid and care was not raised as a separate point of negligence in this case.

instruction and what facts are unnecessary evidentiary details. *Id.* It is reversible error for a verdict director to assume a controversial ultimate fact. *Young v. Kansas City Power & Light Co.,* 773 S.W.2d 120, 125 (Mo.App.1989).

■ Instruction number five stated:

In your verdict, you must assess a percentage of fault to Defendant Martin City Pub, Inc., if you believe:

First, Defendant Martin City Pub, Inc. held its premises open for members of the general public to enter and consume beverages, and

Second, Plaintiff Myron Brown was a paying patron of Defendant Martin City Pub, Inc., and

Third, Defendant Martin City Pub, Inc. knew or should have known that Mike Becker was a person with vicious tendencies likely to inflict injury upon others, and

Fourth, Plaintiff Myron Brown did not know of the tendencies of Mike Becker mentioned in Paragraph Third, and

Fifth, Defendant Martin City Pub, Inc. either:

failed to prevent Mike Becker from entering its premises,

or

failed to prevent Mike Becker from injuring Plaintiff Myron Brown

or

failed to warn Plaintiff Myron Brown of the tendencies of Mike Becker mentioned in Paragraph Third.

Sixth, Defendant Martin City Pub, Inc. was thereby negligent, and

Seventh, such negligence directly caused or directly contributed to cause injury to Plaintiff Myron Brown.

Paragraphs first and second correctly establish the relationship status between an owner/occupier of a premises held open for business invitees and a business invitee properly on the premises. Paragraph fourth establishes that the invitee was not aware of the perpetrator's violent tendencies. The ad-

ditional special facts to establish liability require two elements: 1) Mike Becker was a person with vicious tendencies likely to inflict injury upon others, and 2) Martin City Pub knew of these tendencies. *Durbin v. Cassalo,* 321 S.W.2d at 25–26. The issue is whether an "implied" finding of an essential fact is sufficient in a not-in-MAI instruction. For a jury to find, as it did, that Martin City Pub knew or should have known that Mike Becker was a person with vicious tendencies likely to inflict injury upon others, it must have inferred that Mike Becker was a person with vicious tendencies. The Missouri Supreme Court recently reaffirmed that each ultimate fact necessary to sustain the verdict must be specifically found by the jury. *Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224 (Mo. banc 1994).

■ In Missouri, the ultimate facts are listed as separate paragraphs in the verdict director. This insures that the jury focuses on each element separately and does not assume an element to be true. If the verdict directing instruction assumes an essential, ultimate fact in dispute, that fact has been removed from the jury's determination and constitutes prejudicial error. *Id.* at 226–27.

A separate paragraph should have been inserted in the verdict director immediately preceding paragraph third. The missing paragraph should have read:

Third, Mike Becker was a person with vicious tendencies likely to inflict injury upon others, and

With this insertion, the remainder of the instruction,[3] appropriately renumbered, would properly set forth the ultimate issues for the jury's determination.

The verdict finding instruction was erroneous and prejudicial to Martin City Pub, Inc. because it did not require the jury to specifically find that Mike Becker was a person with vicious tendencies likely to inflict injury upon others. Point two is granted.

---

3. While not prejudicial, the original paragraph seventh should state, "... to cause *damage* to

Plaintiff Myron Brown."

### UNPROVOKED INJURY

Martin City Pub asserts, as its third point on appeal, that the trial court erred in refusing to submit instruction "A," Martin City Pub's converse verdict finder. Part B of Martin City Pub's second point on appeal claims error in tendering the verdict director without including the word "unprovoked." Both points are considered together.

■ The trial court's refusal to tender the converse verdict finding instruction was not error. The rejected converse verdict finder would have interjected an element not required by Missouri Law. The rejected converse instruction stated:

> Your verdict cannot assess any percentage of fault against Defendant Martin City Pub, Inc. unless you believe:
> First, that Michael Becker was an individual of vicious tendencies likely to inflict *unprovoked* injuries on others at the Martin City Pub;
> Second, Defendant Martin City Pub, Inc. knew that Michael Becker was an individual of vicious tendencies likely to inflict *unprovoked* injuries on others; and
> Third, as a direct result of such failure, plaintiff sustained damage.

An instruction must be a correct statement of the law. MAI Committee Comment, XXXIII [1991 Revision]. The relative substantive law does not require that injuries result from unprovoked attack. The *Durbin* court's dicta that a person might have been forced into a fight,[4] does not require a jury to find that the infliction of injuries was unprovoked. No other case law was cited to support this contention. Any perceived provocation would properly be assessed as comparative fault. Point three and part B of point two are denied.

### ADVERSE INFERENCES/FAILURE TO TESTIFY

■ Martin City Pub's contentions in points four, five and six are considered together. In point four, Martin City Pub argues that the trial court erred in refusing to submit Martin City Pub's proposed instruction "B," and in point five Martin City Pub contends that the court erred in refusing to submit proposed instruction "C." Instruction "B" would have instructed the jury not to assume that either Michael Becker or Tommy Doyle were controlled by either Raymond C. Van Noy or the Martin City Pub. Instruction "C" would have instructed the jury not to draw any inference against or for any party because Michael Becker or Tommy Doyle did not testify. Instruction "C" would also have told the jury not to infer that such testimony, had it been given, would have been unfavorable to any party. Martin City Pub, as its sixth point on appeal, avers that the trial court erred in overruling Martin City Pub's objections to Mr. Brown's "efforts to draw an adverse inference against [Martin City Pub] due to the failure of [Mr.] Becker and [Mr.] Doyle to testify."

Counsel for Mr. Brown, in his opening statement, in his cross-examination of Mr. Van Noy, and in his closing statement referenced to Mr. Becker's and Mr. Doyle's absence as witnesses at trial. Mr. Brown's counsel stated that neither he nor Mr. Brown knew where the two were nor could they find them. Mr. Brown's counsel stated that "Tommy Doyle at least was seen with Mr. Van Noy after this lawsuit was filed in the office of their attorneys but when we asked the location of Tommy Doyle, ... they still say they don't know where Tommy Doyle is." Mr. Brown's counsel continued, "They also listed an address for Mike Becker. ... We couldn't find him at that address and ... Mr. Van Noy is taking the position that he doesn't know where Mike Becker is." Martin City Pub's objection, that this statement was argumentative, was sustained by the court. Mr. Brown's counsel then stated the evidence would show that Mr. Van Noy told his attorneys "how to get hold of Mike Becker." After an objection, Martin City Pub's motion for a mistrial was overruled and the jury was instructed to disregard the statement. Mr. Brown's counsel then stated, "In any event, the evidence will be that we cannot find either Mr. Becker or Mr. Tommy Doyle, even they [sic] may know where he possibly—" Another objection was sustained.

4.  321 S.W.2d at 26.

During the cross-examination of Mr. Van Noy, Mr. Brown's counsel read from Mr. Van Noy's deposition, "Do you know where Tommy Doyle is now? ANSWER: Yes. QUESTION: Where? ANSWER: I don't know. He got [sic] a phone number of how to get a hold of him. Right now Tommy Doyle is in Minneapolis, Minnesota." Martin City Pub's objection was sustained. Mr. Van Noy testified on cross-examination that he had been in his attorneys' offices at the same time that his attorneys talked with Mr. Doyle. He also testified that he and Mr. Doyle went somewhere and drank beer together after their visit with the attorneys. Mr. Van Noy testified on cross examination that Mr. Doyle had been in Mr. Van Noy's restaurant three months before trial and again on the night before Mr. Van Noy testified at trial. Mr. Brown's interrogatories to Mr. Van Noy requested the addresses of all witnesses including Mr. Doyle. Mr. Van Noy's answers to the interrogatories stated that he did not know Mr. Doyle's address. At trial Mr. Van Noy said that Mr. Doyle's phone number was by the cash register at Mr. Van Noy's steak house. This number apparently was never supplied to Mr. Brown prior to trial.

In Mr. Brown's closing argument, his counsel asked the jury to remember that neither Tommy Doyle nor Mike Becker testified. Mr. Brown's counsel then asked the jury to "remember the kind of case they put on. Keep those things in mind. Rely on your good common sense."

In Martin City Pub's closing statement, counsel told the jury that neither Mr. Becker nor Mr. Doyle were under the control of Martin City Pub. He told them that both were "out there in the world." And were "just as easily found and subpoenaed by this guy as they are found and subpoenaed by anybody else.... [A]nd easily accessible to anybody with a subpoena."

■ The failure of a party to call a witness who has knowledge of facts and circumstances vital to the case generally raises a presumption that the testimony would be unfavorable to the party failing to offer the testimony. *Kelly v. Jackson,* 798 S.W.2d

699, 701 (Mo. banc 1990). The test of whether a witness is equally available depends on three factors: 1) one party's superior means of knowledge of the existence and identity of the witness; 2) the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, and 3) the relationship of the witness to the party. *Piper v. Missouri P.R. Co.,* 847 S.W.2d 907, 911 (Mo.App.1993). The witness, however, must have knowledge of facts and circumstances vital to the case in order for the concept of equal availability to apply. *Id.* The court in *Kelly,* in determining that the witness was equally available, noted the person who was not called was not present when the alleged negligence occurred and thus did not have any first-hand knowledge of the facts and circumstances. Even more significant in *Kelly* is that the plaintiffs not only deposed the "absent witness" but also read favorable portions of the deposition to the jury at trial. *Kelly,* 798 S.W.2d at 703. In the case *sub judice,* while both parties knew the names of Tommy Doyle and Mike Becker, there was evidence from which the jury could conclude that Martin City Pub had superior access to them. The nature of their testimonies can not be determined from prior statements because the only potential prior statements would be those received by Martin City Pub and its attorneys and are not available to Mr. Brown nor to this court. Being the perpetrators of the assault,[5] however, the nature of their testimony would be integral. Evidence was adduced such that a jury could have found that, while Martin City Pub did not apparently "control" Mr. Doyle and Mr. Becker, a friendly relationship existed beyond that of a tavern/restaurant proprietor and customers.

Mr. Brown did not tell the jury that Martin City Pub controlled Mr. Doyle and Mr. Becker, but rather he implied that it had access to them, and he could not find them. An instruction telling the jury it could not assume that Martin City Pub controlled Mr. Becker or Mr. Doyle was unnecessary, and the court did not err in refusing to submit it.

Mr. Brown did not explicitly ask the jury to draw an adverse inference from Mr. Beck-

**5.** As the perpetrators, they would have motivations of their own to avoid Mr. Brown.

er's and Mr. Doyle's absence, but he implicitly suggested that an adverse inference could be drawn. "A trial court has an opportunity far superior to ours to fairly appraise the impact of an argument to a jury." *Midwest Materials Co. v. Village Dev. Co.,* 806 S.W.2d 477, 492 (Mo.App.1991). The trial court has broad discretion in the area of closing arguments and such discretion is not lightly disturbed on appeal. *Id.* Because it was not clear that the witnesses were equally available to both parties, it was not prejudicial error for the trial court to refuse to submit the instruction telling the jury not to make an adverse inference of the fact that neither Mr. Becker nor Mr. Doyle testified.[6] Likewise, it was not error for the trial court to not sustain each and every objection[7] that Martin City Pub raised to Mr. Brown's questions regarding Martin City Pub's access to Mr. Doyle and Mr. Becker. Points four, five and six are denied.

## SUFFICIENT/COMPETENT EVIDENCE OF MEDICAL EXPENSES

■■■ Martin City Pub alleges, for its seventh point on appeal, that the trial court erred in overruling its motion for a new trial because Mr. Brown failed to submit sufficient and competent evidence of the portion of his damages sustained due to medical expenses. The only hint of an objection at trial was to the reasonableness of the charges. Out of the hearing of the jury, counsel for Martin City Pub stipulated that the charges were the ordinary charges for the services provided but wanted to "make crystal clear that I claim that ordinary charges for the services provided is not the legal equivalent of reasonable."

■■■ To recover damages for medical expenses, those expenses must be supported by substantial evidence that the charges were reasonable and the services rendered were necessary. *Wright v. Fox–Stanley Photo Products, Inc.,* 639 S.W.2d 407, 410 (Mo.App.

1982). Ample evidence was presented at trial that the medical treatment was necessary. Mr. Brown testified concerning his injuries, his health prior to the attack, the medical treatment he received, and his condition at trial. Mr. Brown's mother testified regarding Mr. Brown's condition before and after the attack. Depositions from two treating physicians were read at trial. Mr. Brown's medical records and medical bills were entered into the record.

Mr. Brown did not have medical insurance and Medicare "took care" of the majority of his medical bills. Medicare paid a certain amount and required the hospital and physicians to "write off" the remainder. Martin City Pub contends that expenses paid or "written off" as part of Medicare coverage should not be considered medical charges submitted and paid by plaintiff or an insurance company, and insists that proof of the reasonableness of the medical expenses should have been presented at trial. "It is immaterial whether plaintiff paid [the medical expenses] directly or indirectly by his medical insurance. It sufficed that plaintiff showed the amount *charged* or paid." *Ramsey v. Williams,* 625 S.W.2d 196, 197 (Mo. App.1981) (emphasis added). In the absence of evidence challenging the reasonableness of the ordinary medical expenses actually charged or paid, the fact that the expenses were "taken care of" by Medicare is not materially different than expenses paid by insurance or paid in part by insurance with part "written off" pursuant to a contract or agreement between the medical provider and the insurance company. Point seven is denied.

The judgment is reversed, and the case is remanded for a new trial.

All concur.

---

**6.** It is doubtful that sufficient evidence was presented to entitle Mr. Brown to an instruction specifically telling the jury it could make the adverse inference.

**7.** Most of these objections were sustained. As to these, the trial court apparently determined that

sustaining the objections was sufficient to remove any prejudice because of the form of the questions or comments. *Countryman v. Seymour R–II School Dist.,* 823 S.W.2d 515, 518–19 (Mo. App.1992).