NIMMONS, Judge.
The employer and carrier (E/C) appeal from a workers’ compensation order awarding claimant temporary partial disability benefits, medical benefits, rehabilitation expenses, penalties, interest and costs, and attorney’s fees. We reverse.
Claimant, a twenty-six year old welder, first worked for RCI in New York in 1980. In 1982, while in New York, claimant sustained an on-the-job injury when he fell at work and struck his head causing bleeding from his left ear. Claimant was diagnosed by medical doctors as having a severe bilateral sensorineural hearing loss, such loss being progressive in nature. As a result of the accident, claimant had to wear a hearing aid in both ears. The workers’ compensation claim filed in the New York accident is separate from the claim presently before us.
In June 1984 claimant transferred to the Florida Division of RCI. He worked with this division until May 1985. According to claimant, in his present workers’ compensation claim, it was during this eleven-month period that he sustained an aggravation of his preexisting hearing disorder as a result of repetitive exposure to loud noise in the workplace. The E/C denied compensability claiming that the claimant’s increased hearing impairment was a consequence of progressive deterioration from the New York accident. A hearing was held before the deputy commissioner.
The evidence revealed that RCI is in the business of steel fabrication, a process which necessarily involves loud noise in the workplace. While in New York, claimant was employed as a supervisor and worked mostly in the office. After moving to Flor-i^a, was employed as shop foreman and was in the shoP approximately 95% of the time, where loud noises prevailed most of the time.
An audiologist, Richard McCombs, testified on behalf of the claimant that he had tested the claimant’s hearing and determined that the claimant had sustained a very significant hearing loss of 8 to 10 decibels between August 1984 and August 1985, a loss which he opined was greater than would have occurred from the increasing impairment associated with the claimant’s preexisting hearing disorder. He also opined, over the E/C’s objection, that this increased hearing loss was caused by the claimant’s repetitive exposure to loud noise in the workplace.
The E/C objected to the admission of the audiologist’s above opinions, asserting that the witness’ competency to render such opinions had not been demonstrated and that only a medical doctor would be competent to express opinions on such subjects. The deputy overruled the E/C’s objections.
The deputy entered an order finding the claimant’s hearing loss compensable and awarded temporary partial disability benefits, medical benefits, rehabilitative expenses, penalties, interest, costs and attorney’s fees.
The basic issue presented on this appeal — an issue which is dispositive of the case — is whether the deputy commissioner erred in allowing McCombs to testify as to his above referred opinions and, if so, whether, absent such testimony, there was competent, substantial evidence to support the deputy’s finding of a causal relationship between the claimant’s hearing loss and his exposure to noise at his workplace.
There is very little in the record of this case which would suggest that McCombs was competent to render the subject opinions. He testified that he was licensed by the State of Florida and was employed as a *826 hearing aid specialist by a hearing aid firm in the Palm Beach Mall. It is significant that this witness’ testimony contained a number of self-depreciating statements regarding his competency as an expert witness. For example, he said, “I am purely for the purpose of testing individual’s hearing impairments and for the purposes of fitting hearing aids, nothing more, due to the fact that I am not a medical audiologist.” He continued, “I am a dispenser for hearing aids and my area is to test to see how well they qualify for hearing aids.”
McCombs was allowed, over objection, to testify that he thought that claimant’s increased hearing impairment over the period between August 1984 and August 1985 was greater than the progression that could be expected from the sensorineural loss alone. To the question — again objected to — as to whether such accelerated hearing impairment was “consistent with being exposed to the noise” at his job in West Palm Beach, McCombs replied, “I would think so myself, but there again, I can go only into statistics with that kind of an answer.”[1]
McCombs described himself as a “hearing aid audiologist” and, as noted, said that he was licensed by the State of Florida. His licensure is presumably under Chapter 468, Part I, Florida Statutes (1985).[2] Essentially, he indicated that he was licensed only as a hearing aid “dispenser” as contrasted with what he referred to as a “medical audiologist.” There are no such audiologist classifications in Chapter 468 or the rules thereunder and we have been referred to no other source supporting such classifications.
McCombs testified that physicians regularly refer patients to him for the determination of the degree of hearing loss the patients have sustained. According to McCombs, if a person has a medical problem or “mixed hearing impairment,” McCombs would need clearance through a physician or a prescription before he could fit the person with a hearing device. However, for a nerve deafness hearing problem, McCombs said that physician intervention is not needed since there is nothing medically that can be done to help this type of hearing loss.
Even accepting the above representations by McCombs, the fact that he is competent to measure the loss of hearing experienced by one who has a sensorineural impairment and to dispense a hearing aid device to such person without the intervention of a medical doctor does not suggest competence on his part to render an opinion as to the cause of the claimant’s accelerated hearing loss during the relevant period. In fact, his competence to render an opinion that the claimant’s actual hearing loss was greater than that claimant would have experienced from the pre-existing sen-sorineural impairment is not supported by this record.
The decision as to whether a proffered expert witness possesses the necessary expertise is a matter within the sound discretion of the trial court and will not be disturbed unless clearly erroneous and prejudicial to the adverse party. Quinn v. Millard, 358 So.2d 1378 (Fla. 3rd DCA 1978); Executive Car and Truck Leasing, Inc. v. DeSerio, 468 So.2d 1027 (Fla. 4th DCA 1985.) Of course, the burden is on the party calling the expert witness to establish that he is qualified in the field in which he is called upon to testify. GIW Southern Valve Co. v. Smith, 471 So.2d 81 (Fla. 2nd DCA 1985). And when a witness is called upon to go beyond his expertise, he should not be allowed to testify in terms of expert opinion. Ehrhardt, Florida Evidence § 702.1 (2d Ed.1984); see also Machado v. Foreign Trade, Inc., 478 So.2d 405, 408 (Fla. 3rd DCA 1985) (trial court properly refused to permit a qualified document analyst to give his opinion on mat *827 ters which the witness himself conceded he was not an expert).
We hold that it was error for the deputy commissioner to permit McCombs, over proper and timely objection, to render expert opinions where the evidence failed to show his competency to render such opinions. Our holding should not be understood as one which precludes any audiologist from rendering the kinds of opinions elicited from McCombs. We merely hold that the record of this case fails to demonstrate competence of this witness to render the opinions elicited. Compare Texas Employers Insurance Ass’n v. Fisher, 667 S.W.2d 589 (Tex.Ct.App.1984) (properly qualified audiologist held competent to render opinion regarding cause of hearing loss). We do not go so far as to hold — as urged by the E/C — that the expert must necessarily be a medical doctor.
Absent the improper opinion testimony of the audiologist, there was not competent substantial evidence to support the deputy’s finding of a causal relationship between the claimant’s exposure to noise at the West Palm Beach plant and his diminished hearing capacity.
Because we reverse on this issue regarding compensability, we need not reach the other two issues which involve the determination of average weekly wage and the imposition of interest and penalties.
REVERSED.
«TOANOS, J., concurs.
BOOTH, J., dissents with written opinion.

. We do not know what "statistics" the witness was referring to since none were cited.

. Interestingly, no reference has been made by the parties, either in the proceedings below or here, to Chapter 468 or to the administrative rules promulgated thereunder, to wit: Fla.Adm. Code Rule 6A-10.008 et seq., which are the statutory and rule provisions governing the practice of audiology.