Donald and Ruby **ROUTH**,
Plaintiffs/Appellants,

v.

**ST. JOHN'S MERCY MEDICAL CENTER**, Defendant/Respondent.

No. 53499.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 13, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 14, 1990.

Application to Transfer Denied
April 17, 1990.

Richard L. Hughes, Thomas J. Gregory, Mogab & Hughes Attorneys, P.C., St. Louis, for plaintiffs/appellants.

Gary P. Paul, Bernard C. Brinker, Brinker, Doyen & Kovacs, P.C., Clayton, for defendant/respondent.

SMITH, Judge.

Plaintiffs appeal from a jury verdict and judgment against them in a case based upon medical malpractice. We reverse and remand.

Plaintiff husband was hospitalized and operated on for spondylolisthesis, a congenital condition in which one vertebra slips over an adjoining vertebra resulting in pain. This condition existed at plaintiff's 5th lumbar and first sacral vertebrae. The operation was performed by two surgeons, Dr. Jacob, a neurosurgeon and Dr. Luther,

an orthopedist. Dr. Jacob performed a laminectomy, removal of the fifth lumbar disc, and Dr. Luther performed a fusion between the fourth lumbar and first sacral vertebrae. The operating notes reflected no problems during the surgery. Examination in the recovery room on June 9, 1982, the day of surgery, and on three succeeding days gave no indication of any problem in the right foot other than some numbness in the right leg, a condition which had existed prior to the operation. On June 13 plaintiff began complaining of problems in the right foot which in short order manifested themselves by a foot drop. A second surgery was performed in July which indicated a change in the condition of the nerve controlling the foot since the earlier operation. In the first operation Dr. Jacob had noted that the nerve was free and not compressed after the surgical procedure. In the second operation the nerve was found to be red, edematous, and compressed. The foot drop condition did not respond to treatment and is permanent.

Following the first operation Dr. Jacob left orders for the nurses: "Bed rest, roll like a log, use at least three people; patient not to roll self." The "log roll" is a procedure where the nurses utilize a draw sheet to turn the patient from one position to another. Its purpose is to make the turn as if the patient were a rigid log and to avoid any twisting of the spine in making the turn. When utilizing three nurses, two of them handle the draw sheet standing next to each other, and the third nurse, on the opposite side of the bed, places pillows behind the patient when he has reached the correct position. There was testimony that in the absence of an order as to the number of nurses to be used, proper nursing procedure called for use of at least two nurses in performing the maneuver, particularly with spinal fusion patients. Good nursing practice requires that nurses follow the doctor's orders in handling patients.[1]

Plaintiffs, husband and wife, and husband's hospital roommate testified that at approximately four p.m. on June 12 a nurse, Suzanne Stoy, came into the room for the purpose of turning husband. She was alone. Stoy was described at trial as a large woman, six feet or taller and weighing approximately two hundred pounds. Husband's weight is similar. All three witnesses testified that Stoy attempted to log roll husband by herself by turning him on his side. Husband testified that he had immediate pain and all three witnesses testified he screamed. Stoy released the draw sheet and husband rolled back into position on his back. He stated he felt an immediate sensation like rubber bands breaking in his back and down his right leg. Stoy immediately left the room. Her nurse's notes reflect that husband was turned at approximately four p.m. and that he was in some pain. It made no other reference to the alleged incident. Stoy, still an employee of the hospital at the time of trial, did not testify. Upon motion of defendant prior to argument to the jury, plaintiffs' attorney was directed by the court not to refer to Stoy's failure to testify or to draw an inference therefrom. This ruling serves as plaintiffs' first contention of error.

In all, five doctors testified at trial. Four were experts hired by the respective sides for the purpose of testifying. Dr. Jacob was the fifth, called by plaintiff. Dr. Jacob did not attempt to testify to causation for the foot drop but did testify that there had been movement at the fusion site between the first and second operation causing compression of the nerve. Plaintiffs' outside expert attributed the foot drop to nurse Stoy's actions. Defendant's three experts, a neurologist, an orthopedist, and a neurosurgeon, each had a different theory of causation but all agreed that the foot drop did not result from the alleged actions of Stoy. The medical experts were generally agreed that they would expect to see evidence of nerve damage caused by the operation itself immediately or very shortly after surgery.

1. There was evidence that before June 12 Dr. Luther made a further order to continue log roll but made no specification of the number of nurses to perform the procedure. For purposes of this appeal it is unnecessary to determine whether that order modified Jacob's order on the number of nurses required to log roll.

Neither Dr. Luther nor Dr. Swaykus, husband's internist and regular doctor testified. Wife testified that she had reported the Stoy occurrence to Dr. Swaykus and attempted to report it to Dr. Jacob. Dr. Jacob had a recollection that there was some question in "their minds about some movement" but did not remember the details. Over plaintiffs' objection defendant's attorney was allowed to argue to the jury an adverse inference from the failure of plaintiffs to produce Drs. Swaykus and Luther. This ruling constitutes plaintiffs' second contention of error.

In addition to his physical problems relating to his foot, husband also has a pre-existing problem with his arm which had been under treatment since 1973. He was treated for that condition by Dr. Meiners. Records were subpoenaed from Dr. Meiners. Included in those records were reports made by the doctor to an insurance company in 1983, 1985, and 1986, all after the foot drop. The essence of the doctor's reports was arguably that the arm problems had ultimately rendered husband disabled from employment. This would conflict with plaintiffs' evidence that his inability to work was the result of the foot drop. These reports (minus any reference to the insurance company) over plaintiffs' objection, were read to, but not seen by, the jury. The order overruling the objection is plaintiffs' third contention of error.[2]

We turn first to the refusal of the trial court to allow plaintiffs to comment on the failure of defendant to produce nurse Stoy as a witness. Stoy had been deposed. In her deposition she stated she had no recollection of plaintiff husband or of the incident involving the turning and her only knowledge of his nursing treatment by her was based upon the notes found in the nurse's chart. She did testify however, to her ability to perform the log rolling activity without assistance, her willingness to do so under the proper circumstances, and inferentially at least, that on occasions she had done so.

The so-called "adverse inference" has presented continuing difficulty to the courts. The basic rule is that the failure of a party to call a witness having knowledge of facts and circumstances vital to the case generally raises a presumption that the testimony would be unfavorable to the party failing to proffer it. It is improper, however, for a party to argue the negative inference resulting from his opponent's failure to produce such a witness if the witness is equally available to both parties. *Leehy v. Supreme Express & Transfer Company,* 646 S.W.2d 786 (Mo. banc 1983) [8–10]. If the witness is equally available it is prejudicial error for the court to overrule an objection to the argument. *Hill v. Boles,* 583 S.W.2d 141 (Mo. banc 1979)[1]. It is similarly prejudicial error to sustain an objection to such argument if the argument is proper. *Chavaries v. National Life & Accident Ins. Co. of Tennessee,* 110 S.W.2d 790 (Mo.App.1937) [14].

The rule has an origin pre-dating modern rules of discovery. *Id.* [11–14]. With modern discovery its application has become more difficult. In *Midwest Library Service, Inc. v. Structural Systems, Inc.,* 566 S.W.2d 249 (Mo.App.1978) [3,4] we squarely held that deposing the witness made the witness "equally available" to both parties destroying the inference and its arguability. The trial court here specifically based its ruling on the *Midwest Library* case. In *Leehy, supra,* the Supreme Court rejected "an extreme holding either that an employee is necessarily more available to his employer simply because of his status as an employee or that a witness associated with one party is necessarily equally available to the other if the other has deposed him." *Leehy, supra,* footnote 4 and [8–10]. The court opted rather for the balancing test enunciated in *Hill v. Boles, supra.*

*Hill v. Boles* articulated that the question of "equal availability" depends on several factors, three of which were: (1) one

---

**2.** Plaintiffs' final point involves a portion of defendant's argument to the jury which plaintiffs contend constituted an unwarranted personal attack on plaintiffs and their counsel of concealing Dr. Meiners as a treating physician. This matter is unlikely to arise at retrial and we need not address it.

party's superior means of knowledge of the existence and identity of the witness; (2) the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and (3) the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other. [2]. The court in *Leehy* focusing on the "equal availability" facet of the rule concluded that the argument was improper where it involved an employee of the defendant who had been deposed and whose deposition reflected his only knowledge of the incident in litigation was based upon hearsay.

■ While *Leehy* premises its result on an analysis of "equal availability" it would seem more logical to assess the applicability of the rule to a deposed witness on another aspect of the rule. The basic rule is applicable to a witness "having knowledge of facts and circumstances vital to the case." We do not view the adverse inference rule as a substitute for truth nor as a means for misrepresentation to the jury. A purpose of discovery is to allow both sides to determine what witnesses have knowledge of facts and circumstances vital to the case. It does not serve judicial economy or efficiency to require a party to call a witness who might conceivably have relevant evidence (but who in fact does not) or face the adverse inference argument. Where the parties and the court are aware that the not otherwise equally available witness has no relevant evidence to give, allowance of the adverse inference argument is little more than fraud on the jury. We believe this to be the true teaching of *Leehy* and that that case engrafts upon the equal availability concept that part of the rule requiring the witness to have knowledge of facts and circumstances vital to the case.

■ We find no merit to defendant's contention that the issue concerning Stoy's absence as a witness was not preserved because no offer of proof of the inference argument was made. Prior to argument defendant requested the court to instruct plaintiffs not to comment on defendant's failure to call Stoy as a witness. There followed six pages of colloquy between counsel and the court on the defendant's request. Ultimately the request was granted by the court "without great confidence" based on its conclusion that *Midwest Library Service, supra,* controlled and that nurse Stoy had been deposed. It is clear that the trial court was fully aware of what proposed argument was intended and no further offer was required.

■ Nurse Stoy was at the time of the incident and at the time of trial an employee of defendant. She was the only person in the room other than the three witnesses of the plaintiffs. She was the employee alleged to have committed the tortious act. It is a reasonable presumption that if the incident did not occur as plaintiffs' witnesses said it did she would have so testified. Much of defendant's cross-examination of plaintiffs' occurrence witnesses involved casting doubt on the accuracy and truthfulness of their account of the incident. Defendant also devoted a considerable part of its argument to the jury to whether the incident occurred as related by plaintiffs' witnesses. Nurse Stoy's actions in the hospital room were an issue before the jury. It is true that in her deposition she denied any recollection of the incident. But it is clear that the entry in the nurse's notes was made by her and reflected that husband was turned by her. The deposition also reflects Stoy's practice of log rolling patients by herself contrary to good nursing practice and her belief that she could safely log roll a patient by herself. Her deposition testimony indicated therefore a usual practice by Stoy supportive of plaintiffs' evidence of the incident. Stoy's conduct at the time of the incident and her usual nursing practices were facts vital to the case and her status as defendant's employee and the sole tortfeasor raise the presumption that her testimony would have been unfavorable to the defendant when it failed to call her. The trial court erred in

refusing to allow plaintiffs' use of the adverse inference. Such error is presumptively prejudicial. *Chavaries v. National Life and Accident Insurance Co. of Tennessee, supra.* Defendant has not dispelled the presumption of prejudice and the case must be remanded for new trial.

■ Plaintiffs' second point is similar but not identical to the first and may arise at retrial. As a general rule a party's treating or examining physician is presumptively more available to that party. *Hill v. Boles, supra,* [2]. There is nothing here to remove Dr. Swaykus from that presumption. He was husband's regular internist and wife testified she had told him about the Stoy incident after it happened. The defendant made a strong point in cross-examination and in argument about the failure of plaintiffs to report the incident to the doctors involved including Dr. Swaykus. Dr. Swaykus therefore was a relevant witness and plaintiffs' failure to call him justified the court's ruling.

■ Dr. Luther presents a different situation. In *Hill v. Boles, supra,* the court held that the presumption concerning a treating doctor could be inapplicable by reason of the circumstances shown in evidence. This would occur if the evidence is sufficient to show that there existed enough of a relationship between the doctor and the defendant to affect the doctor's personal interest in the outcome of the litigation. Dr. Luther was brought in to assist Dr. Jacob in the surgery by Dr. Jacob to whom plaintiffs had been referred by Dr. Swaykus. Both Drs. Luther and Jacob were on the staff of defendant. Neither had a prior relationship to plaintiffs and Dr. Luther was not selected by plaintiffs as husband's surgeon. Husband saw Dr. Luther one time before the surgery. This was a medical malpractice case against the hospital where Dr. Luther was on staff making the situation analogous, as pointed out in *Hill v. Boles* [3], to those cases holding an employee witness more available to an employer. There are distinctions between this case and *Hill v. Boles* but we do not regard them as notable. Dr. Luther was equally available under the teachings of that case to both parties and defendant should not have been allowed to comment on plaintiffs' failure to produce him. That was also prejudicial error.

We find no merit to the plaintiffs' third contention of error. The reports were identified adequately under the Business Records Act, Sec. 490.660 et seq. RSMo. 1986. The doctor's opinions contained therein were admissible. *Ellis v. State Department of Public Health and Welfare,* 285 S.W.2d 634 (Mo. banc 1956) [8–11] revd. on other grounds in *Hill v. State Department of Public Health and Welfare,* 503 S.W.2d 6 (Mo. banc 1973) [2].

Judgment is reversed and cause remanded for new trial.

SATZ, P.J., concurs.

GRIMM, J., concurs in result only.