**Harold W. PIPER, Plaintiff–Respondent,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant–Appellant.**

**No. 60657.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 19, 1993.

Rehearing Denied March 8, 1993.

Thomas R. Jayne, Edward Cohen, James W. Erwin, T. Evan Schaeffer, Thompson & Mitchell, St. Louis, for defendant-appellant.

Mark T. McCloskey, Gail Renshaw, The Lakin Law Firm, P.C., Wood River, IL, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from jury verdict and resultant judgment of $75,000 against it and in favor of plaintiff in this FELA case. The injury claimed by plaintiff was loss of hearing. We reverse and remand.

Plaintiff was employed by the defendant railroad as an engineer in 1971. In 1975 while being treated by a Dr. Gay for recurrent ear infections plaintiff's hearing was tested and a hearing loss was found. He

filed suit in August, 1988.[1] In his petition plaintiff alleged that he had been exposed, during his employment, to variable loud and excessive noise due to the negligence of the defendant. This, he alleged, caused his loss of hearing.

Defendant contends that plaintiff failed to make a submissible case because of the absence of medical evidence to establish that noise in the workplace was the cause of his hearing loss. Plaintiff produced two witnesses to establish causation. The first was a treating doctor, Dr. Dickens. The second was Dr. Shumaier, an audiologist with a Ph.D. in audiology but not a medical doctor. The original intent during the trial was to have the testimony of Dr. Dickens establish that the loss of hearing was noise induced and to have Dr. Shumaier testify to the specific noises responsible for that loss, i.e., workplace noises. After reading the transcript of the deposition of Dr. Dickens the trial court ruled that the doctor's testimony "would not qualify as an opinion that this gentleman's loss of hearing was caused by noise." The court did, however, rule that the deposition was relevant and useful to the jury and allowed it to be shown to the jury. The basis of the court's ruling on the insufficiency of Dr. Dickens's testimony to establish a noise induced loss of hearing was the equivocation of the witness in stating that it was the cause of the hearing loss. Throughout the deposition the doctor stated that the plaintiff's hearing difficulties were "consistent" with loss of hearing from excessive noise. The court, over objection, permitted the testimony of the audiologist that the loss of hearing was noise induced and the noise arose from the workplace. Defendant contends that the audiologist lacked the qualifications to make the determination that the loss of hearing was caused by excessive noise as such was a medical determination. Plaintiff disputes that position and further contends that the testimony of Dr. Dickens was sufficient to establish that the hearing loss was noise induced.

■ We find no error in the court evaluation of Dr. Dickens's testimony. While it is clear that Dr. Dickens regarded noise as a strong suspect he was not willing to testify that it was the cause of the hearing loss. At best he stated that the hearing loss was consistent with a noise induced loss. "Consistent" means "compatible", or "coexisting and showing no noteworthy opposing, conflicting, inharmonious or contradictory qualities or trends". *Webster's Third International Dictionary.* The medical evidence here established a large number of possible causes for a hearing loss such as the plaintiff's. Noise was one of them. That plaintiff's condition was consistent with noise induced loss was not the equivalent of stating that noise was the cause of the loss, only that it was one of the possibilities.

■ We do not agree with the trial court that the audiologist was competent to diagnose noise as the cause of the plaintiff's hearing problems. There were a large number of possible causes for the loss involving the plaintiff's overall physical condition, heredity, and genetics. The audiologist is not a medical doctor and does not have the medical expertise to assess the medical factors required to make a diagnosis that noise was the cause of the plaintiff's hearing problems.[2] That determination requires medical training beyond that received by the witness here. There appears to be a split of authority in other jurisdictions concerning the propriety of allowing audiologists to testify on the causation of hearing problems. *See, e.g., Texas Employers' Insurance Association v. Fisher,* 667 S.W.2d 589 (Tex.App.1984); *RCI SE Services Division v. Sisson,* 527 So.2d 824 (Fla.App.1988). Because of his

---

1. No issue is raised on appeal concerning the statute of limitations although that defense was raised in defendant's answer.

2. One of the plaintiff's own medical experts stated concerning diagnosis of hearing problems by audiologists: "... we don't feel that is correct because they don't know anything about

what I call the whole body. All they know is a little bit about the ear. And we don't think they can make a diagnosis because they do not consider other diseases than the ear, such as all kinds of diseases of the body, hypertension and whatever else."

training and experience, however, an audiologist may well be able to testify to the types, quality, duration and loudness of the sounds necessary to cause hearing loss once it has been established that the loss the plaintiff sustained was noise induced. *Lineberry v. State,* 1990 WL 16313, 8 (Tenn.App.). Dr. Shumaier demonstrated the expertise, based upon his training and experience, to give such expert testimony. His testimony, therefore, that the sounds to which plaintiff was exposed in the workplace would cause a hearing loss such as was sustained by the plaintiff can be considered in determining whether plaintiff made a submissible case on the issue of causation.

■ At the close of the plaintiff's case the plaintiff had failed to provide expert medical testimony sufficient to establish causation and defendant's motion for directed verdict at that point could have been sustained. However, when thereafter the defendant offered evidence that evidence may be considered in determining whether the plaintiff made a case at the close of the evidence. *Hopkins v. Tip Top Plumbing and Heating Company,* 805 S.W.2d 280 (Mo.App.1991) [1–4]. Defendant produced expert medical testimony the thrust of which was that the defendant's workplace did not produce the types of noise to cause plaintiff's hearing loss. One of those experts did testify that the primary cause of the hearing loss in both of plaintiff's ears was noise. That testimony coupled with the testimony of Dr. Shumaier was sufficient to establish that noise was the cause of the hearing loss and the noise encountered by plaintiff at his workplace was the noise producing the loss. That was sufficient to establish causation.

■ Defendant premises error upon the refusal of the trial court to allow it to invoke an adverse inference from the failure of the plaintiff to produce treating physicians. We find defendant's position to be well-founded as to Dr. Gay, who first discovered plaintiff's hearing loss. Where a witness is not equally available to both parties, it is prejudicial error for the trial court to prevent the party to whom the witness is not equally available from requesting the jury to draw an adverse inference from the failure of the opposing party to produce the witness. *Routh v. St. John's Mercy Medical Center,* 785 S.W.2d 744 (Mo.App.1990) [1–3]. "Equal availability" has become a term of art, and depends on several factors: (1) one party's superior knowledge of the existence of the witness; (2) the nature of the testimony witness would be expected to give in light of his previous statements; and (3) the relationship of the witness to the party. *Id.* The witness must have knowledge of facts and circumstances vital to the case in order for the concept of equal availability to be applicable. *Id.* at [4]. It is not necessary for a party to call every conceivable person who might be imagined to have knowledge pertinent to the case in order to avoid the adverse inference. A party's treating physician is presumptively more available to that party, but that presumption may be inapplicable because of the facts of the particular case. *Robnett v. St. Louis University Hospital,* 777 S.W.2d 953 (Mo.App. 1989) [3].

■ Defendant sought to invoke the inference as to two treating physicians, Drs. Gay and Colclasure. Dr. Colclasure treated plaintiff on one occasion for a Q-tip stuck in his ear and for a nasal obstruction. The record does not give any indication that Dr. Colclasure had any involvement with determining or evaluating plaintiff's hearing loss or furnished any treatment therefor. Nothing in the record indicates that Dr. Colclasure had knowledge of facts or circumstances vital to the case.

Dr. Gay is a different story. He was the physician who initially gave the hearing examination which revealed the plaintiff's hearing loss. The notes of that examination were sketchy at best. They indicated that plaintiff came to Dr. Gay in 1975 complaining of ringing in the ears and sore throat. The notes indicated that a hearing test was performed and the doctor recommended that plaintiff have a deviated septum straightened and wear ear plugs. Medical evidence at the trial indicated that the onset of plaintiff's hearing problems in

1975 occurred in an unusually brief period if they had their etiology in excessive noise first encountered in his employment commencing in 1971. Dr. Gay's diagnosis of the hearing problems and any opinion he might have of their cause as well as possible history taken from the plaintiff was therefore important in determining the defendant's liability for the hearing loss. Further, whether plaintiff was advised by Dr. Gay of the possible cause of his hearing problems was relevant to the pleaded defense of the statute of limitations. Plaintiff's testimony was that he could not remember what was discussed during his treatments by Dr. Gay.

■ Plaintiff asserts that Dr. Gay's testimony would have been cumulative because his records were before the jury. That does not preclude utilization of the adverse inference. *Mathews v. Chrysler Realty Corporation,* 627 S.W.2d 314 (Mo. App.1982) [4]. Further, here the records do not contain the information about which the doctor could be expected to have testified, i.e., diagnosis, history, and/or causation.

The trial court refused to allow the invocation of the inference based upon *Kelly by Kelly v. Jackson,* 798 S.W.2d 699 (Mo. banc 1990). That case is distinguishable on at least two grounds. There the doctor involved was both the treating physician of the plaintiff and the employer of the defendant. Two conflicting presumptions therefore arise. Additionally, plaintiff favorably utilized portions of the doctor's deposition. As the court stated: "... a party may not have the advantage of an adverse inference while benefiting by reading favorable portions of the witness' deposition to the jury." *Id.* at [5].

■ Plaintiff further contends that defendant declined to take the deposition of Dr. Gay. Deposing a witness does not ultimately make the witness equally available. *Leehy v. Supreme Express and Transfer Company,* 646 S.W.2d 786 (Mo. banc 1983) [8–10]; *Kelly by Kelly v. Jackson, supra* at [4]. Conversely, neither does failing to depose him. Nothing in the record rebuts the presumption that Dr. Gay,

plaintiff's treating doctor, was more available to plaintiff.

■ Dr. Gay had vital information as the treating physician who originally diagnosed plaintiff's hearing loss. He was not an equally available witness as that term is utilized. It was error for the trial court to refuse to allow the defendant to request the jury to draw an adverse inference from plaintiff's failure to produce that witness. Given the closeness of the issue of causation we cannot conclude the error was not prejudicial.

Defendant's remaining contention of error is premised upon a ruling invoking trial court discretion in evaluating testimony. The testimony may not be precisely the same on retrial so we need not review the claimed error.

Judgment is reversed and the cause is remanded for new trial.

GARY M. GAERTNER, P.J., and KAROHL, C.J., concur.