ESTATE OF Samuel C. TREECE and Louise Treece, Appellants,

v.

G.D. STILLIE, D.O., Respondent.

No. WD 46980.

Missouri Court of Appeals, Western District.

Dec. 7, 1993.

Motion for Transfer Denied Feb. 1, 1994.

Harley Kent Desselle, Independence, for appellant.

Bev William Jacob Jr., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

The plaintiffs, Samuel C. Treece, deceased, and his wife, Louise Treece, brought this action for medical malpractice against G.D. Stillie, D.O. They alleged and undertook to prove that Dr. Stillie had been negligent in failing to diagnose metastatic prostate cancer of the thoracic spine.

At the close of all the evidence, the trial court sustained defendant's motion for a directed verdict. Plaintiffs have appealed from the ensuing judgment, claiming the evidence made a submissible case and the court was in error in sustaining the motion for a directed verdict.

The evidence favorable to plaintiffs tended to show the following facts:

Samuel Treece in January, 1987, underwent prostate cancer surgery by urologist Dr. Lynn McCanse. Defendant Dr. Stillie, a radiation oncologist, to whom Dr. McCanse referred Mr. Treece, treated him from March to June, 1987, by a series of radiation treatments. Mr. Treece made follow-up visits to Dr. Stillie in July and October, 1987, and in February, 1988. This case focuses on the February, 1988 visit to Dr. Stillie, for it was at that time, the plaintiffs claim, Dr. Stillie should have recognized symptoms of metastatic prostate cancer of the thoracic spine, and should have conducted further tests, or should have reported the ominous symptoms to other physicians.

When Mr. Treece visited Dr. Stillie at his office in February, 1988, Mr. Treece testified, he told Dr. Stillie he was having lumps on his ribs and severe pain in his ribs and spine. Dr. Stillie did not recommend any treatment or further examination.

Dr. Stillie reported his findings to Dr. McCanse, who had done the prostate surgery on Mr. Treece in January, 1987, and to Dr. Felix Pileggi, Mr. Treece's family physician. His report to them was that Mr. Treece was having no problems, and that percussion along the bony spine caused no pain.

In April, 1988, Mr. Treece became totally paralyzed as the result of the spread of the cancer to the spinal column. He died on July 21, 1991 of the complications of metastatic carcinoma of the prostate.

Plaintiff in a medical malpractice case must, in order to make a submissible case, show prima facie that defendant's act or omission failed to meet the requisite standard of medical care; and that the negligent act or omission caused the plaintiff's injury. *Jines v. Young*, 732 S.W.2d 938, 944 (Mo. App.1987).

The omission of Dr. Stillie to pursue the diagnosis of metastatic cancer of the spine is alleged by plaintiffs to have fallen below the reasonable standards of medical care. The symptoms reported by Mr. Treece to Dr. Stillie on his visit of February, 1988 should have indicated to Dr. Stillie the possibility of

metastatic cancer of the spine. He should then have conducted further tests, or should have reported Mr. Treece's symptoms to Mr. Treece's other physicians.

■ That the omissions of Dr. Stillie fell below the required standard of care was proved by the testimony of Dr. John Morse, an orthopedist. Defendant does not claim that Dr. Morse's testimony was not sufficient to establish this point, if his testimony was admissible and if it was believed, but he argues that Dr. Morse was not qualified as an expert, because he was an orthopedist, while Dr. Stillie was a radiation oncologist. The trial judge admitted the opinion testimony of Dr. Morse over defendant's objection.

■ The decision whether a witness is qualified to testify as an expert is largely within the discretion of the trial court. *Hord v. Morgan*, 769 S.W.2d 443, 448 (Mo.App. 1989). Where a physician witness gives opinion testimony about the reasonable standard of medical care, and whether certain conduct of another physician did or did not measure up to that standard, the fact the witness is in a different field of specialization than the defendant is no ground for rejecting his testimony. That fact goes only to the weight to be given the testimony. *Swope v. Printz*, 468 S.W.2d 34, 40 (Mo.1971) (psychiatrist testified to acceptable medical standards in field of thyroid surgery); *Harris v. Bales*, 459 S.W.2d 742, 747–51 (Mo.App.1970) (osteopath qualified to testify as expert on standard of care in case against medical doctor involving reduction of bone fractures.) The test ultimately is whether the expert witness has "sufficient skill, knowledge, or experience in the field or calling as to make it appear that his opinion will probably aid the trier in his search for truth." *Eichelberger v. Barnes Hosp.*, 655 S.W.2d 699, 704 (Mo.App.1983). Defendant's objection to Dr. Morse's opinion testimony was properly overruled.

■ Plaintiffs then say, and defendant denies, that the evidence was sufficient to prove a causal connection between Dr. Stillie's alleged negligence and the later progress of Mr. Treece's disease, which ultimately brought about his death on July 21, 1991.

Was there evidence that Mr. Treece's tumor-caused paralysis in April, 1988 was "the natural and probable consequence" of Dr. Stillie's alleged negligence? Dr. Morse's testimony by deposition on this point was:

Q. [Plaintiffs' Attorney] Doctor, why is the early detection and treatment of this particular type of cancer important?

A. [Dr. Morse] Generally speaking, the carcinoma of the prostrate (sic) is a fairly slow growing tumor, and can be reasonably controlled, sometimes by hormonal therapy and possibly by surgery.....

Q. Doctor, does the early detection of cancer figure into the equation of continued life expectancy?

A. Yes.

Q. How does it factor into life expectancy of a cancer patient of this nature?

A. The possible removal and or additional treatment of the area, and as I have indicated, from hormones and the possibility of additional x-rays to the involved area, although they carry some hazards in itself, but generally it would be expected to improve. The decrease in pain would increase the mobility, and although not in itself curative, it would certainly increase and improve the quality of the remaining years.

The foregoing testimony was sufficient to show, prima facie, a causal connection between Dr. Stillie's failure to diagnose the metastatic cancer of the spine in February, 1988, and the later course of the disease. Of course the fact that injury follows negligence does not of and in itself create liability. The burden is on the plaintiff to prove causal connection between the two. And if the injury could reasonably have come from one of several causes, one or more of which is not the fault of the doctor, than any verdict would be based on speculation and surmise. But absolute and mathematical certainty is not required. It is sufficient if there is substantial evidence which shows that the injury is a natural and probable consequence of the negligent act or omission. And this can be determined by reasonable inferences from proven facts or circumstantial evidence. Where the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred, and they *did* occur, the question of causal connection is sufficient to go to the jury.

*Steele v. Woods,* 327 S.W.2d 187, 195 (Mo. 1959).

Defendant argues that it was the negligence of another physician, an orthopedist who had seen Mr. Treece in September, 1987, which was the cause of Mr. Treece's damages. This orthopedist misdiagnosed Mr. Treece's back pain as "internal shingles." Defendant goes ahead to argue that, since the jury could not determine whose negligence it was—Dr. Stillie's or the orthopedist's—that caused Mr. Treece's damages, a finding that Dr. Stillie's negligence caused Mr. Treece's damages could not stand because it was speculative and unsupported by evidence. This argument scarcely needs an answer. If a patient goes to two physicians in succession, each of whom should have taken certain actions indicated by the patient's symptoms, and both of whom negligently fail to take the indicated actions, then—if the physicians' omissions cause damage to the patient—the patient may recover his damages against either one or both. *See Callahan v. Cardinal Glennon Hosp. & St. Louis Univ.,* 863 S.W.2d 852, 862–863 (Mo. banc 1993); *Sanders v. Wallace,* 817 S.W.2d 511, 517 (Mo.App.1991). There can, of course, be no duplicative recovery.

The plaintiffs made a prima facie case and were entitled to have their case submitted to the jury.

Plaintiffs say the court erred in excluding certain causation opinion testimony of Dr. Morse, their expert witness. The court excluded the offered opinion testimony upon defendant's objection, on the ground the opinion was not based upon reasonable medical certainty, but was conjectural. The alleged error is not likely to recur in another trial, and we will not deal with it. See, however, Judge Smart's instructive opinion in *Brines v. Cibis,* 1993 WL 478526, No. 46411 (Mo.App.W.D. November 23, 1993).

Judgment reversed and case remanded for a new trial.

All concur.