Mary Jane ADAMS, Plaintiff–Appellant,

v.

Jason A. KISER, Defendant–Respondent.

No. 21692.

Missouri Court of Appeals,
Southern District,
Division One.

June 25, 1998.

Motion for Rehearing and Transfer to Supreme Court Denied March 25, 1998.

Robert D. Lewis, Crouch, Davis, Lewis & Rykowskip, Rob J. Aiken, Springfield, for Plaintiff-Appellant.

Richard E. Dorr, Blackwell, Sanders, Weary & Lombardi, L.C., Springfield, for Defendant–Respondent.

PREWITT, Judge.

Plaintiff contended that she was injured in an automobile collision due to Defendant's negligence. Following trial by jury, a verdict was returned in her favor assessing her damages at $960.92. Judgment was entered in accordance with the verdict. The issue at trial was not liability, but the extent and the cause of injuries which Plaintiff contended she received in the collision. By motion for a new trial, Plaintiff sought a new trial as to damages alone. Following denial of that motion Plaintiff appealed.

Here, Plaintiff presents one point relied on, contending that the trial court erred in allowing Defendant's counsel to comment in argument upon the failure of Plaintiff to call as a witness her treating physician and to urge the jury to draw an adverse inference due to his failure to testify.

Failing to a call a witness who has knowledge of vital facts generally raises a presumption that the testimony would be unfavorable to the party failing to offer the testimony. *Kelly v. Jackson*, 798 S.W.2d

699, 701 (Mo.banc 1990). Allowing reference in argument to a party's failure to produce a witness is reversible error if the witness is "equally available" to both parties. *Id.*

■ There is a presumption that a party's treating physician in a personal injury action is more available to that party, and not "equally available," thus allowing the opposing party to comment on the failure of the physician to be called as a witness. *Leehy v. Supreme Express & Transfer Co.,* 646 S.W.2d 786, 790–91 n. 4 (Mo.banc 1983); *Hill v. Boles,* 583 S.W.2d 141, 146 (Mo.banc 1979); *Mathews v. Chrysler Realty Corp.,* 627 S.W.2d 314, 317 (Mo.App.1982). However, in "a proper case this presumption may be held inapplicable by reason of the circumstances shown in evidence." *Hill,* 583 S.W.2d at 146. *See also Leehy,* 646 S.W.2d at 790–91 n. 4. Comment upon a party's failure to produce a witness predates modern rules of discovery. *Kelly,* 798 S.W.2d at 701.[1]

■ Previous to *Hill,* cases stated inflexible rules, among which was that a party's treating physician is necessarily more available to that party. *Kelly,* 798 S.W.2d at 701. Since *Hill,* there is a balancing test dependent upon several factors. Apparently the three most important are those specifically stated in *Hill,* 583 S.W.2d at 145–46:

1. one party's superior means of knowledge of the existence and identity of the witness;

2. the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and

3. the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.[2]

The parties agree that the first factor is neutral here. Both parties knew of the physician. We move to discuss the remaining factors described as "related" in *Kelly,* 798 S.W.2d at 702, and *Leehy,* 646 S.W.2d at 791. They are likewise related here. The physician-patient relationship might well have affected the testimony of a treating physician of Plaintiff's, had he testified. His records were introduced in evidence. These and perhaps other exhibits indicate his opinions or lack thereof as to Plaintiff's condition and its cause.[3]

The automobile collision occurred on August 22, 1992. Thereafter, Plaintiff was treated in the emergency room at Cox Medical Center—South. Previous to the collision Plaintiff was a patient of a medical physician, Steven D. Atwood, and apparently had been seeing him since at least July of 1991, according to the records filed here. At trial, Plaintiff testified he had been her doctor for "probably six or seven years."[4]

Dr. Atwood did not testify and it is Defendant's counsel's comments regarding this that are in issue here. A physician who testified for Defendant concluded from Dr. Atwood's records that he had been treating

---

1. Previous to the Missouri Supreme Court's decision in *State ex rel. McNutt v. Keet,* 432 S.W.2d 597 (Mo.banc 1968), the rationale of this argument was clear as the patient-physician privilege prevented discovery of the physician's opinions. Today, with the discoverability of medical records, the deteriorating relationship of attorneys and physicians, and the growing dissatisfaction of physicians with lawsuits, apparently at least in part due to malpractice actions directed against physicians, whether arguments should be allowed regarding the failure to call a physician can be questioned. However, as our Supreme Court, the "controlling court" in this state, Mo. Const., art. V, § 2, has repeatedly allowed such argument, we proceed with the analysis as prescribed in its decisions and those in the districts of this Court.

2. This last factor (3) has been succinctly stated as "the relationship of the witness to the party." *Piper v. Missouri Pacific R.R. Co.,* 847 S.W.2d 907, 910 (Mo.App.1993).

3. The introduction of a physician's records does not preclude making the adverse inference argument. *Piper,* 847 S.W.2d at 911. *See also Mathews,* 627 S.W.2d at 317 (medical report). The physician was not deposed, but deposing a witness or failing to depose him does not ultimately make him equally available. *Piper,* 847 S.W.2d at 911.

4. Trial commenced on January 14, 1997, and the verdict was returned on January 17, 1997.

Plaintiff for arthritis prior to the collision. Following the collision Plaintiff first saw Dr. Atwood on August 24, 1992. His records noted that since the collision, "she had mechanical ache in her neck, and Tylenol or Darvocet have not been able to control." He further noted, in regard to her problems, "Expect intermittent problems, nothing severe and resolution within a month. If not then recheck." Following a visit to the physician's office on December 13, 1994, his records reflect that Plaintiff "is still having considerable discomfort in her spine, cervical, thoracic and especially lumbar without radiculopathy. Often mechanical." The records of that date state:

> During the last two years, she has seen Neurology, Orthopedics, Physiatry [sic], Physical therapy. Had two caudal blocks, tried three different NSAID agents, four different muscle relaxers and Pamelor and TNS unit. She still has problems. None of her meds have bothered her and she has no GI intolerance to NSAID agents.
>
> EXAM: The spine visibly appears normal and with palpation has mild discomfort, with maniputlation of the neck. She has discomfort at extremes and straight leg raising to 90 degrees without difficulty.
>
> IMPRESSION:
>
> 1. Ongoing cervical neck pain and lumbar back pain.
>
> 2. Some benefit from meds, but still considerable morbidity.
>
> PLAN:
>
> 1. Recommend she try chiropractic manipulation and suggested names of some local providers.
>
> 2. Continue with SOMA t.i.d.
>
> 3. Increase Pamelor from 10 t.i.d. to 25 b.i.d.
>
> 4. Change Voltaren to aspirin or Ecotrin 2 p.c. t.i.d. p.r.n.
>
> 5. Follow up in two months, sooner if needed....

The record, dated September 14, 1995, reflects:

PHONE CALL:

> Patient call and spoke with Peggy for 10 minutes. I then spoke with her by phone from my office for another 10 or 15 minutes.
>
> She said she and her attorney had reviewed every page of my medical record. She also noted that she had seen Dr. Mohsen as an expert on her condition per there commendation of friends and then later mentioned it to her attorney. She also noted they had all the reports and records from the numerous experts that we had referred her to.
>
> She wants me to write a letter to state her situation and I said I guess that means she wants me to clarify her diagnosis, prognosis, quantitate her disease, etc. I feel that as her family doctor and internist that that is the purview of the sub-specialist that we referred her to. I recognize that she has suffered a lot and continues to suffer and that I suspect it will be ongoing indefinitely and that all of the medications and TENS units and everything that we have prescribed, have clear indication as to what they are for from the prescription as well as from the chart.
>
> I don't feel it is appropriate for me to try and tell her attorney how to handle this case or have a successful outcome on her behalf, nor do I feel it is appropriate for me to slant the facts to enhance any particular aspect of her position. The facts should speak for themselves and it is clear that she is having a lot of problems and taking a lot of therapy for it and those problems are ongoing. I defer the subspecialties work to her subspecialist's [sic].

These records could be interpreted as indicating that Dr. Atwood had no opinion as to whether the automobile collision was causing the problems there noted, or that he did not wish to state an opinion, perhaps because it would be adverse to Plaintiff, and that he thought that she expected him to "slant the facts to enhance" her position in the lawsuit.

This appears, as described in *Hill*, to be "the typical personal injury action [where] the plaintiff's personal physician has no connection whatsoever with the defendant . . . and was chosen by said plaintiff . . . and the interest of the treating physician lies . . . particularly with the patient without any extraneous interests." 583 S.W.2d at 146. We

interpret *Hill* as indicating that in such a situation, ordinarily the witness is not "equally available."

Even though the witness has a relationship to a party which would indicate that the witness would normally be favorable to that party, comments upon the failure to call a witness are not proper where the record indicates the testimony would have been "virtually meaningless." *Leehy*, 646 S.W.2d at 791. Here, it would be difficult to say that Dr. Atwood's testimony would have been meaningless. He did not immediately treat Plaintiff after the collision, but did so extensively afterwards and had seen her before the collision. Whether, if under oath, Dr. Atwood would have given an opinion as to causation, a strongly-contested issue, cannot be determined from the exhibits or other parts of the record. The adverse inference rule does not apply where evidence would be only corroborative or cumulative. *Kelly*, 798 S.W.2d at 703. It cannot definitely be determined that Dr. Atwood's testimony would have been such. Of course, it is possible that Plaintiff or her counsel knew more regarding the physician's thoughts and opinions than Defendant's attorneys or the records disclosed.

Except for the factors referred to in Note 1, *supra*, it might be expected that the physician would testify in Plaintiff's favor, that he would believe her statements as to her medical problems, and would give her the benefit of any reasonable doubt. If that would have been true, it might have been expected that Plaintiff would have called the physician as a witness.

The third factor appears to weigh heavily for allowing the argument made by Defendant's counsel. The physician had a long-standing relationship with Plaintiff as his patient and so far as the record discloses, no relationship with Defendant. The medical records, the primary basis for determining the second factor here, are inconclusive as to what the witness would have said in his testimony as to key issues. If the physician's opinion had been favorable to Plaintiff, he likely would have been called as a witness, and, conversely, if unfavorable, perhaps that was the reason he was not called. Even the

expression of no opinion could be said to be adverse to Plaintiff, as it is an indication that causation of her condition by the collision cannot be established.

If such arguments are to be allowed, which is as earlier noted, up to the Missouri Supreme Court, then we conclude that this is a situation where an adverse inference could be drawn from the failure to call as a witness the Plaintiff's physician. Plaintiff's contention is denied.

The judgment is affirmed.

GARRISON, P.J., and CROW, J., concur.