Anne M. BELLA, Plaintiff–Respondent,

v.

Steven R. TURNER, M.D., and Heart Clinic of the Ozarks, Inc., Defendants–Appellants.

No. 23399.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 5, 2000.

Petition for Rehearing and Transfer Denied
Oct. 30, 2000.

Application for Transfer Denied
Dec. 5, 2000.

Bruce E. Hunt, Jeffrey S. Monroe, Russell L. Makepeace, Burkart & Hunt, P.C., Springfield, for appellants.

David W. Ansley, Deborah K. Dodge, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for respondent.

JAMES K. PREWITT, Judge.

Plaintiff sought damages for medical malpractice against Defendant Steven R. Turner, a medical physician, and the clinic with which he is associated, Defendant Heart Clinic of the Ozarks, Inc. Following a jury trial, a verdict was received awarding Plaintiff one million dollars against both Defendants. Pursuant to the limitation of non-economic damages contained in § 538.210, RSMo 1994, judgment was entered in favor of Plaintiff for $762,290.00. Defendants appeal, presenting five points relied on.

As the sufficiency of the evidence to support the verdict is not an issue, we will initially only briefly set forth the facts. Other relevant facts will be mentioned in discussing the points relied on.

Plaintiff entered the hospital on December 19, 1996, suffering from a heart attack. Defendant Turner, a cardiologist, performed an angioplasty and administered the anti-coagulant drug, heparin, to reduce the risk of blood clotting. Plaintiff remained on heparin until December 24, 1996, when she was discharged from the hospital.

The following day, Plaintiff returned to the hospital, having suffered a stroke. Other physicians treated her and administered heparin. Defendant Turner resumed the care of Plaintiff on January 1, 1997, and continued to prescribe heparin. On January 6, 1997, Plaintiff suffered another stroke. On January 15, at the request of Plaintiff's family, Defendant Turner ceased treating Plaintiff and another cardiologist, Dr. Allyn, assumed primary care of Plaintiff.

Dr. Allyn called in a hematologist, Dr. Gomez, who discontinued heparin on January 17, and diagnosed Plaintiff as having heparin-induced thrombocytopenia with thrombosis ("HITT"), an abnormal condition that causes blood to clot due to heparin.

In their brief, Defendants summarize "Plaintiff's theory of the case is that the administration of Heparin in conjunction with this disease caused her blood to clot, resulting in an ischemic stroke." Defendants state that their "theory of the case was that plaintiff suffers from antiphospholipid antibody syndrome (APLAS), another blood disorder, and that APLAS in fact caused the stroke." Defendants state that "[h]eparin is appropriate therapy for APLAS."

Defendants' initial point contends that the trial court erred in preventing Defendants from cross-examining two medical physicians who testified as experts for Plaintiff "regarding standard of care and the nature of the diagnosis in dispute." Defendants assert that this kept them from cross-examining the physicians "on matters of objectivity and credibility, ... and ... prevented defendants from developing testimony refuting a key component of plaintiff's case-in-chief, namely that HITT was a common and well-known diagnosis in 1996."

After Dr. Patricia Cole testified for Plaintiff, Defendants' counsel sought, by an offer of proof presented out of the hearing of the jury, to show that Dr. Cole found no fault with the treatment of Dr. Allyn, who took over Plaintiff's care on January 15. Dr. Allyn continued administering heparin until bringing in Dr. Gomez as a hematological consultant on January 17. On that day, Dr. Gomez discontinued heparin and made the diagnosis of heparin-induced thrombocytopenia with thrombosis.

After Dr. Gerald Allen Soff testified for Plaintiff, Defendants' counsel made an offer of proof by questioning the doctor out of the presence of the jury. Essentially, the questions asked sought to show that the other physicians involved in Plaintiff's care did not seek to discontinue the heparin and did not reach the diagnosis of heparin-induced thrombocytopenia with thrombosis, yet Dr. Soff found no fault with them. In response to a series of questions, Dr. Soff stated that at least one of the other physicians, "if . . . in a position to directly affect the use or not to use [sic] heparin, . . . deviated from the standard of care." As we read his testimony, he placed responsibility on Dr. Turner, because he was the primary attending physician, rather than a consultant.

Defendants argue that Plaintiff's two experts were using a "double standard" because the experts gave testimony "criticizing defendant Turner for not making a diagnosis while preventing defendant from demonstrating that other members of his profession were not held to the same standard of care in treating plaintiff." However, as we read the testimony Defendants elicited in an offer of proof, it appears that Dr. Cole found no fault with Dr. Allyn because Dr. Allyn brought in a hematological consultant who discontinued the heparin within two days after he became the primary attending physician. Dr. Soff appears to have testified that as the primary attending physician, it was Dr. Turner who was responsible for the use of heparin.

Both parties discuss *Tillman v. Elrod*, 897 S.W.2d 116 (Mo.App.1995), which states, at 118: "Where concurrent or successive negligence combined together results in injury, the injured party may recover damages of either or both, and neither can use the defense that the prior occurrence or negligence of the other contributed to the injury." Defendants acknowledge that *Tillman* "stands for the proposition that concurrent tortfeasors cannot escape liability by pointing out the misfeasance of one another." They say they do not dispute this statement, but argue that the trial court exceeded the holding of *Tillman* "by preventing effective cross examination of the experts regarding standard of care."

The portion of *Tillman* that the parties discuss pertains to negligence of two or more persons combining to create an injury. *Tillman* is not controlling, as it appears the physicians who subsequently treated Plaintiff caused no injury, in that the damage from the stroke had already occurred. *Tillman* aside, there was no abuse of discretion in the trial court's ruling. Although cross-examination on matters of credibility is generally permitted, the extent and scope of cross-examination is in the discretion of the trial court, and its ruling will not be disturbed except where a clear abuse is shown. *Crain v. Newt Wakeman, M.D ., Inc.*, 800 S.W.2d 105, 107 (Mo.App.1990).

The admissibility of expert testimony is within the trial court's discretion. *Estate of Dean*, 967 S.W.2d 219, 224 (Mo. App.1998). "A trial court does not usually commit reversible error by mere exclusion of expert testimony, even if the offered testimony is relevant and admissible." *Id.* Furthermore, "[a] trial court . . . is authorized to exclude evidence which is irrelevant, immaterial or which is collateral to the proceeding." *Id.* Stated another way: "It is . . . generally proper to exclude . . . evidence that unnecessarily diverts the attention of the jury from the question to be

decided." *Destin v. Sears, Roebuck & Co.,* 803 S.W.2d 113, 116 (Mo.App.1990). "If a decision of the trial court on the admission or exclusion of evidence is correct for any reason it will be affirmed." *Id.* at 117.

■ Generally, courts have ruled that evidence of the negligence of other persons not before the court is not admissible. *See Longshore v. City of St. Louis,* 699 S.W.2d 16, 18 (Mo.App.1985)(error to admit evidence that other persons used road for negligent or illegal purpose of drag racing in wrongful death case). *See also State v. Hutchison,* 947 S.W.2d 535, 536 (Mo.App.1997)(evidence of other's negligence not a defense in criminal charge of careless and imprudent driving).

Plaintiff's experts in Defendants' offer of proof explained how the circumstances when Dr. Allyn took over Plaintiff's care were different from those while Dr. Turner was treating Plaintiff. It is unlikely that the jury would have found that there was, as Defendants urge, a "double standard" in the witnesses' standard of care. Under these circumstances, we do not think that it was abuse of discretion for the trial court to exclude testimony which would have discussed whether Dr. Allyn was also negligent, as such testimony might be confusing to the jury. The cross-examination that Defendants sought would have brought up the negligence of another physician who treated Plaintiff after the fact of the damage. Such evidence is generally irrelevant and can be confusing to the jury. Placing it under the label of cross-examination as to the standard of care does not change what it would have presented to the jury. Under these circumstances, we find no abuse of discretion by the trial court in excluding it. Point I is denied.

■ For their second point, Defendants contend that the trial court erred when it prevented Defendants from making an adverse inference argument due to the failure of Plaintiff to call as witnesses two of her treating physicians, Dr. Allyn and Dr. Gomez. As earlier noted, Dr. Allyn succeeded Dr. Turner as Plaintiff's primary attending physician and Dr. Allyn called in Dr. Gomez for a hematological consult.

Defendants cite, among other decisions, this District's opinion in *Adams v. Kiser,* 971 S.W.2d 331, 333 (Mo.App.1998), for the holding that there is a presumption that a party's treating physician is more available to that party and thus not equally available, which allows the opposing party to comment on the failure to call that physician as a witness. *Adams* was an automobile negligence action, not medical malpractice. Here, we think the considerations are considerably different.

■ *Hill v. Boles,* 583 S.W.2d 141 (Mo. banc 1979), provided for a balancing test in determining whether a treating physician is more available, stating at 145–46:

1. one party's superior means of knowledge of the existence and identity of the witness;

2. the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and

3. the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.

■ As *Hill* concluded, the situation is different in a "typical" personal-injury case than in a medical-malpractice action. *Hill* was a malpractice case in which the Plaintiff sought damages from the treating physician. There, the court determined it was reversible error to allow defendant's attorney to argue an adverse inference from the failure of the plaintiff to call as a witness one of the physicians who subsequently treated plaintiff. *Hill* stated, 583 S.W.2d at 147:

898

The court in *Gridley* [*v. Johnson,* 476 S.W.2d 475, 479 (Mo.1972)], supra, recognized that it is not reasonable to say that where a patient makes a malpractice claim, all doctors he or she sees thereafter must, ipso facto, be produced as witnesses or else the defendant can argue the inference is the missing doctors would not have supported the claim [o]f malpractice.

Considering the totality of the circumstances, as the court did in *Hill*, we conclude there was no error. Doctors Allyn and Gomez were affiliated with the same Springfield hospital as Dr. Turner. Dr. Turner was familiar with Dr. Gomez and often consulted with a hematologist connected with Dr. Gomez's group. Dr. Turner and Dr. Allyn trained together in Oklahoma City in the 1980's, and Dr. Allyn would not take over Plaintiff's care without Dr. Turner's approval. Plaintiff's relationship with both doctors was relatively short.

■ The trial court has discretion in the allowance of remarks in closing argument. *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852, 870 (Mo.banc 1993). We find no abuse of that discretion under the facts here. *Cf. Kelly v. Jackson,* 798 S.W.2d 699 (Mo.banc 1990); *O'Donnell v. Heutel,* 637 S.W.2d 377 (Mo.App.1982). Point II is denied.

■ Defendants' third point states: "The trial court prejudicially erred in giving Instruction No. 8, the plaintiff's verdict director, because it created a roving commission by offering disjunctive submissions, the second of which lacked any supporting credible evidence."

Plaintiff contends that this point does not preserve error because of its failure to comply with the points-relied-on provisions contained in Rule 84.04(d)(1). Plaintiff's contention is well taken. Rule 84.04(d)(1) states:

**(d) Points Relied On.**

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action* ], because [*state the legal reasons for the claim of reversible error* ], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

*Roberts v. Flowers,* 996 S.W.2d 130, 135 (Mo.App.1999), explains that besides the challenged ruling: "Rule 84.04(d)(1)(B) and (C) require, respectively, that a point relied on state concisely the legal reasons for the claim of reversible error and explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Where a point is so deficient, nothing is preserved for review except for plain error review pursuant to Rule 84.13(c). That rule provides that an appellate court, in its discretion, may grant relief from unpreserved plain errors affecting substantial rights if the Court finds that manifest injustice or miscarriage of justice has resulted therefrom. *In re Marriage of Ford,* 990 S.W.2d 698, 702 (Mo.App.1999).

Here, the second part of the disjunctive verdict director hypothesized that defendant "failed to timely request a hematologist consult." Plaintiff's theory on this aspect was that, had Dr. Turner consulted with a hematologist after a proper diagnosis, the hematologist would have discontinued the use of heparin. That is, in fact, what occurred after Dr. Gomez was consulted by Dr. Allyn. We conclude that there was no reversible error and certainly

no plain error due to this submission. Point III is denied.

■ For their fourth point, Defendants contend that the trial court erred in failing to grant a mistrial when Dr. Soff was asked why he became involved in the suit and was allowed to answer over Defendants' objection. The doctor stated: "In this case, I got involved because I thought it was such a gross example of negligence that I felt it was—it would almost be irresponsible for me to not—not get involved in this case."

After a recess, Plaintiff's attorney joined in Defendants' objection and asked the court to order the jury to disregard the question and answer. At that point, defense counsel moved for a mistrial because the jury was allowed to hear the statements and "also to digest them during a prolonged recess." The mistrial was denied, but the court informed the jury:

> [A]t the end of this morning there was a question asked by Mr. Ansley about the motivation for why Dr. Soff would be testifying, Mr. Hunt objected. At this time I am instructing you to disregard the motivation as to why Dr. Soff would be testifying in this case as given in his last answer. You are to disregard that answer. Thank you.

■ Granting or denying a request for mistrial is within the sound discretion of the trial court, and this Court will interfere only if there is a manifest abuse of that discretion. *Glidewell v. S.C. Management, Inc.*, 923 S.W.2d 940, 956 (Mo.App. 1996). Declaring any mistrial is a drastic remedy reserved for only the most grievous of errors where the prejudice cannot otherwise be removed. *Stucker v. Rose*, 949 S.W.2d 235, 238 (Mo.App.1997). We agree that this is a close question, but deferring to the trial court's apparent determination that there was no prejudicial effect and assuming that the jurors diligently did as told, we cannot say that there was an abuse of the trial court's discretion in this particular. Point IV is denied.

■ Defendants' remaining point asserts that the trial court erred in allowing Plaintiff's expert witness, Dr. Silvers, a medical physician, to testify regarding the standard of care and causation "because he was unqualified to do so, in that he admitted having no experience or expertise in these matters." This point is well-answered in *Estate of Treece v. Stillie*, 868 S.W.2d 111, 113 (Mo.App.1993). There the question was whether an orthopedist could testify regarding the standard of care of a radiation oncologist. In determining that the orthopedist could so testify, the court stated, at 113:

> The decision whether a witness is qualified to testify as an expert is largely within the discretion of the trial court. [citation omitted] Where a physician witness gives opinion testimony about the reasonable standard of medical care, and whether certain conduct of another physician did or did not measure up to that standard, the fact the witness is in a different field of specialization than the defendant is no ground for rejecting his testimony. That fact goes only to the weight to be given the testimony.

Dr. Silvers is a medical physician specializing in neurology who testified that he frequently prescribes heparin and is aware of heparin-induced thrombocytopenia with thrombosis, its symptoms, and how it should be treated. There was no abuse of discretion in allowing his testimony. Point V is denied.

The judgment is affirmed.

CROW, J., and GARRISON, J., concur.